Alexis E. Danneman (#030478)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
ADanneman@perkinscoie.com

Todd M. Hinnen (WSBA No. 27176)
*Pro hac vice pending*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
THinnen@perkinscoie.com

*Attorneys for Nonparty Glassdoor, Inc.*

X FILED ___ LODGED
___ RECEIVED ___ COPY
JUN 07 2017
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____________ DEPUTY

SEALED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

MC-17-36-PHX-DJH

In re: Grand Jury Subpoena Issued to Glassdoor, Inc.

GJ Subpoena No. 16-03-217
(Assigned to Honorable Diane J. Humetewa
United States District Judge)

**STIPULATED MOTION TO UNSEAL**

(Filed Under Seal)

The United States of America and Glassdoor, Inc. ("Glassdoor") stipulate as follows:

1. To ensure the existence of a final, appealable order, *see, e.g.*, *Cobbledick v. United States*, 309 U.S. 323, 328 (1940), Glassdoor has waived a hearing on contempt and submitted to entry of judgment of contempt on the terms set forth in the parties' June 2, 2017 stipulated motion. Pursuant to the parties' stipulation, the Court entered an order dated June 5, 2017, finding Glassdoor, Inc. in civil contempt of a sealed order dated May 10, 2017.

2. Glassdoor has filed a notice of appeal of the civil contempt order.

3. The parties hereby stipulate to a partial unsealing of the record in this matter.

a. Glassdoor believes that other entities with an interest in the First

Amendment issues raised in the briefing may seek to file amicus briefs. While the government reserves its position on the filing of amicus briefs in an expedited appeal, it agrees that a limited unsealing of the record that masks the nature of the underlying investigation would enable prospective amici to review the legal arguments, and would not be inconsistent with grand jury secrecy protections.

b. A limited unsealing is consistent with circuit precedent. In *United States v. Index Newspapers LLC*, 766 F.3d 1072 (9th Cir. 2014), the Ninth Circuit held that, because a civil contempt hearing "'better resembles a criminal trial . . . than it does a grand jury proceeding,'" at least some portions of such hearings should be open to the public and unsealed. *Id.* at 1089. In addition, the Court may wish to unseal portions of the pleadings that the parties filed in support of and opposition to the motion to compel, as well as this memorandum and any other pleadings related to the imposition of the contempt sanction. *Id.* at 1093 ("Logic dictates that at least some of the filings related to contempt hearings ancillary to grand jury investigations may be open to the public . . ."); *see also In re Special Counsel Investigation*, 332 F. Supp. 2d 33, 34 (D.D.C. 2004) (unsealing portions of the underlying record in a grand jury subpoena dispute following a contempt sanction).

c. Accordingly, the parties have prepared a packet of redacted filings and orders and have attached it as an exhibit to this stipulation. (The packet contains all of the underlying case documents, in redacted form as necessary to protect grand jury secrecy, to wit: Glassdoor's motion to quash; a related declaration; an order setting a briefing schedule; the government's response; an order permitting a reply; Glassdoor's reply; the government's motion for leave to file a sur-reply; the Court's order granting such leave; the government's sur-reply; and the Court's order denying the motion to quash.) The parties consent to the partial unsealing of this *case*; the parties further request that all individual docket entries remain sealed, *other than*:

- the parties' June 2, 2017 stipulation regarding entry of an order of

contempt,

- the Court's June 5, 2017 order of contempt,
- the parties' June 7, 2017 stipulated motion to unseal,
- the redacted packet of filings attached as Exhibit A, and
- the order issued pursuant to this Stipulated Motion to Unseal.

Respectfully submitted this 7th day of June, 2017.

**PERKINS COIE LLP**

By: ______________________
Alexis E. Danneman (#030478)
2901 North Central Avenue
Suite 2000
Phoenix, AZ 85012-2788
ADanneman@perkinscoie.com

Todd M. Hinnen (WSBA #27176)
*Pro hac vice pending*
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
THinnen@perkinscoie.com

*Attorneys for Glassdoor, Inc.*

**ELIZABETH A. STRANGE**
Acting United States Attorney
District of Arizona

By:/s/ Gary M. Restaino
Gary M. Restaino
Andrew C. Stone
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Gary.Restaino@usdoj.gov
Andrew.Stone@usdoj.gov

*Assistant U.S. Attorneys*

# EXHIBIT A
# Redacted Record in 16-03-217

Alexis E. Danneman (#030478)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
ADanneman@perkinscoie.com

Todd M. Hinnen (WSBA No. 27176)
(*pro hac vice application to be filed*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
THinnen@perkinscoie.com

William J. Frimel (CA No. 160287)
Christopher R. Edgar (CA No. 229771)
(*pro hac vice applications to be filed*)
SEUBERT FRENCH FRIMEL & WARNER LLP
1075 Curtis Street
Menlo Park, CA 94025
Tel: 650.322.3048
Fax: 650.322.2976
bill@sffwlaw.com

*Attorneys for Nonparty Glassdoor, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| IN RE: GRAND JURY SUBPOENA ISSUED TO GLASSDOOR, INC. | Case No.<br>(Grand Jury Subpoena No. 16-03-217)<br><br>**MOTION TO QUASH GRAND JURY SUBPOENA PURSUANT TO FED. R. CRIM. P. 17(C)(2); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**DOCUMENT SUBMITTED UNDER SEAL**<br>(Motion consists of 11 pages) |
|---|---|

Alexis E. Danneman (#030478)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
ADanneman@perkinscoie.com

Todd M. Hinnen (WSBA No. 27176)
(*pro hac vice application to be filed*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
THinnen@perkinscoie.com

William J. Frimel (CA No. 160287)
Christopher R. Edgar (CA No. 229771)
(*pro hac vice applications to be filed*)
SEUBERT FRENCH FRIMEL & WARNER LLP
1075 Curtis Street
Menlo Park, CA 94025
Tel: 650.322.3048
Fax: 650.322.2976
bill@sffwlaw.com

*Attorneys for Nonparty Glassdoor, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

IN RE: GRAND JURY SUBPOENA ISSUED TO GLASSDOOR, INC.

Case No.
(Grand Jury Subpoena No. 16-03-217)

**MOTION TO QUASH GRAND JURY SUBPOENA PURSUANT TO FED. R. CRIM. P. 17(C)(2); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Pursuant to Fed. R. Crim. P. 17(c)(2), Nonparty Glassdoor, Inc. ("Glassdoor") respectfully moves to quash the grand jury subpoena served upon it dated March 6, 2017 by the Assistant United States Attorney for the District of Arizona (the "Subpoena").

Glassdoor's motion is supported by the accompanying Memorandum of Points and Authorities, the Declaration of Thomas O'Brien, and such other materials as may be presented to the Court at or before the time of the hearing in this matter.

**INTRODUCTION**

The grand jury subpoena at issue demands the identities of 125 anonymous individuals who posted reviews of [redacted] on glassdoor.com, a website on which employees provide information about, and share their experiences working at, employers. When it received the Subpoena, Glassdoor, which operates glassdoor.com, asked the government whether it would be possible for the government to obtain the information it seeks without learning the identities of Glassdoor's anonymous users. The government offered to narrow the scope of the subpoena to seek fewer user identities, but continued to request Glassdoor's users' information. With respect to the Subpoena's purpose, the government advised Glassdoor only that it seeks the identities of "third party witnesses to certain business practices relevant to our investigation." (Decl. of Thomas O'Brien, Apr. 3, 2017 ("O'Brien Decl."), Exh. E.)

While Glassdoor has no desire to interfere with the grand jury's investigation, "an author's decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment," *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 342 (1995), and compelling the identification of Glassdoor's anonymous users could have a chilling effect on both Glassdoor's reviewers' and readers' willingness to use glassdoor.com. This is particularly significant because the reviews concern the operations and labor conditions at an employer that administers publicly-funded [redacted] programs [redacted] *See, e.g., Gardetto v. Mason*, 100 F.3d 803, 813 (10th Cir. 1996) ("The objectives, purposes, and mission of a public university are undoubtedly matters of public concern" for First Amendment purposes).

As Glassdoor is committed to protecting its users' First Amendment right to anonymous expression, Glassdoor brings this motion to seek a judicial determination as to

whether the government is entitled to deprive the Reviews' authors of their First Amendment right to speak anonymously. Specifically, the government must demonstrate to the Court that (1) it has a compelling interest in obtaining the [redacted] reviewers' identities, and (2) there is a clear nexus between those persons' identities and the grand jury's investigation. *See In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, 706 F. Supp. 2d 11, 18 (D.D.C. 2009) (denying motion to compel compliance with grand jury subpoena "seek[ing] records of customer purchases of expressive materials, which are presumptively protected by the First Amendment," because the government failed to "demonstrate[] a compelling need for them and a sufficient nexus between the records and the grand jury's investigation"). It is particularly important that the government be required to make such a showing given that, based on the government's statements, the apparent purpose of the Subpoena is solely to locate potential third-party witnesses. (*See* O'Brien Decl. Exh. E, at 1.) If the government cannot make the necessary showing, the Subpoena must be quashed.

**STATEMENT OF FACTS**

Glassdoor operates glassdoor.com, which provides a forum for current and former employees of companies to anonymously voice opinions regarding those businesses. (O'Brien Decl. ¶ 2.) Glassdoor.com users also discuss federal, state and local government employers on the site. (*Id.*) An employee can anonymously express an opinion about an employer on glassdoor.com by posting a "review," in which the employee assigns the employer between one and five stars in a number of categories, and discusses the employer's "pros and cons." (*Id.* ¶ 3.) Employees can also share information regarding employers' labor conditions, salaries and job interviewing practices. (*Id.*) In order to post reviews or other information to glassdoor.com, users need to provide e-mail addresses to Glassdoor, but those addresses are not publicly displayed on the site. (*Id.* ¶ 4.) Glassdoor does not compose or edit the employer reviews appearing on the site. (*Id.*)

Over a nine-year period, between September 2008 and March 2017, numerous Glassdoor users posted 125 employee reviews of [redacted] on glassdoor.com. (*Id.* Exh. A

& ¶ 6.)  The Subpoena, which is dated March 6, 2017, requests, "[f]or the time period September 1, 2008 to present," the following:

> All "Company Reviews" for including all reviewer information. Reviewer information requested includes, but is not limited to, internet protocol addresses and logs associated with all reviews including date and time of post, username, email address, resume, billing information such as first name, last name, credit card information, billing address, payment history and any additional contact information available.

(O'Brien Decl. Exh. C, Att.) The Subpoena reproduces eight of the Reviews, which date from between November 2015 and January 2017, under the heading " Company Review Examples," but does not explain why those particular reviews are listed. (*Id.*)

Glassdoor contacted the Assistant United States Attorney in charge of this matter ("AUSA"), and advised the AUSA that providing the information sought in the Subpoena would infringe the reviewers' First Amendment right to anonymous expression, and have a chilling effect on reviewers' and readers' willingness to use glassdoor.com for protected First Amendment activities. (*Id.* Exh. D.) The AUSA offered to narrow the Subpoena to seek only the identities of the authors of the eight Reviews listed as "examples" in the Subpoena, but asserted that the AUSA was not required to show a compelling interest in obtaining the reviewers' identities or a substantial nexus between those identities and the investigation. (*Id.* Exh. E, at 2.) The AUSA further stated that the purpose of the Subpoena is to locate "third-party witnesses to certain business practices relevant to our investigation." (*Id.* Exh. E, at 1.)

Glassdoor is expressly committed to protecting its users' First Amendment right to anonymous expression. (*Id.* Exh. F, ¶ 6(D) (provision of glassdoor.com Terms of Use stating that "we reserve the right, to the fullest extent permitted by applicable law, to take appropriate action to protect the anonymity of our users against the enforcement of

subpoenas or other information requests that seek a user's electronic address or identifying information").) To seek pre-enforcement judicial review of a subpoena that seeks to deprive the [redacted] reviewers of their First Amendment right to speak anonymously, and that may have a broader chilling effect on protected expression, Glassdoor brings this motion. (*Id.* ¶ 5.)

## ARGUMENT

### I. THE SUBPOENA INFRINGES GLASSDOOR'S USERS' FIRST AMENDMENT RIGHTS

#### A. The Reviewers Have a First Amendment Right to Speak Anonymously, and Glassdoor's Readers have a Right to Receive Information from the Site

"[A]n author's decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment." *McIntyre*, 514 U.S. at 342; *see also Berger v. City of Seattle*, 569 F.3d 1029, 1038 (9th Cir. 2009) ("Registration requirements . . . dissuade potential speakers by eliminating the possibility of anonymous speech," and may thus contravene First Amendment); *Awtry v. Glassdoor, Inc.*, No. 16-mc-80028-JCS, 2016 WL 1275566, *11 (N.D. Cal. Apr. 1, 2016) ("[I]t is well-established that anonymous speech on the Internet, like other types of anonymous speech, enjoys First Amendment protection."). Moreover, glassdoor.com's readers have a First Amendment right to receive information, as "[t]he First Amendment 'embraces the right to distribute literature, and necessarily protects the right to receive it.' . . . . It protects material disseminated over the internet as well as by the means of communication devices used prior to the high-tech era." *Clement v. Cal. Dept. of Corr.*, 364 F.3d 1148, 1151 (9th Cir. 2004) (quoting *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943)); *see also Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well-established that the Constitution protects the right to receive information and ideas.").

Courts have recognized that government investigations seeking the identities of anonymous internet speakers, or readers of the content they provide, may reduce

individuals' willingness to speak anonymously, and to exercise their right to receive information. *See In re Grand Jury Subpoena to Amazon.com dated Aug. 7, 2006*, 246 F.R.D. 570, 573 (W.D. Wis. 2007) (recognizing that, "if word were to spread over the Net — and it would — that the FBI and the IRS had demanded and received Amazon's list of customers and their personal purchases, the chilling effect on expressive e-commerce would frost keyboards across America"); *In re Grand Jury Investigation*, 706 F. Supp. 2d at 17-18 ("[I]f the subpoenaed customer records" sought by grand jury, which could be used to identify purchasers of allegedly obscene content, "are given to the Government, it could have a chilling effect on the exercise of Company X's customers' First Amendment right[]" to receive information); *see also Rich v. City of Jacksonville*, No. 3:09-cv-454, 2010 WL 4403095, *8, 11 (M.D. Fla. Mar. 31, 2010) (prosecutor's alleged "conduct in investigating, discovering and disclosing the author of the anonymous blog violated [plaintiff's] First Amendment rights by destroying his ability to speak anonymously," and "deterred him from . . . 'perfectly peaceful discussions of public matters of importance'") (quoting *Talley v. Cal.*, 362 U.S. 60, 65 (1960)).

**B. The Government Must Show a Compelling Interest in Obtaining the Reviewers' Identities, and a Substantial Nexus between those Identities and the Grand Jury's Investigation**

Although there is a public interest in investigating possible violations of law, "the grand jury's 'power is not unlimited.'" *In re Grand Jury Investigation*, 706 F. Supp. 2d at 13 (quoting *United States v. Calandra*, 414 U.S. 338, 346 (1974)). "Its powers are constrained by any valid privilege, whether established by the Constitution, statute, or the common law." *Id.* Thus, like other criminal subpoenas, a grand jury subpoena may be quashed pursuant to Fed. R. Crim. P. 17(c)(2), which provides that, "[o]n motion made promptly, the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." *See, e.g., In re Grand Jury, John Doe No. G.J. 2005-2*, 478 F.3d 581, 585 (4th Cir. 2007) ("Rule 17(c) offers a vehicle for a subpoenaed party to assert a constitutional, statutory, or common-law privilege" in response to grand jury

subpoena). "While what is reasonable" under Rule 17(c)(2) "depends on the context, it is clear that a subpoena may be quashed if it cannot withstand constitutional scrutiny." *In re Grand Jury Investigation*, 706 F. Supp. 2d at 14 (citing *United States v. R. Enters.*, 498 U.S. 292, 299 (1991)).

"A grand jury subpoena will be enforced despite a First Amendment challenge if the government can demonstrate a compelling interest in and a sufficient nexus between the information sought and the subject matter of its investigation." *In re Grand Jury Subpoena Duces Tecum*, 78 F.3d 1307, 1312 (8th Cir. 1996); *see also In re Grand Jury Investigation*, 706 F. Supp. 2d at 18 ("In order to survive a First Amendment challenge the government must show that they have a compelling interest in obtaining the sought-after material and that there is a sufficient nexus between the subject matter of the investigation and the information they seek."); *In re Grand Jury Subpoena to Amazon.com dated Aug. 7, 2006*, 246 F.R.D. at 572 ("If the witness demonstrates a legitimate First Amendment concern raised by the subpoena, then the government must make an additional showing that the grand jury actually needs the disputed information."); *United States v. C.E. Hobbs Found. for Religious Training & Educ., Inc.*, 7 F.3d 169, 173 (9th Cir. 1993) (to quash summons by IRS seeking religious foundation's financial documents, "the Foundation must make a showing that the . . . summons burdens" foundation's First Amendment rights, and "[i]f the Foundation succeeds in making this prima facie showing, the IRS action will be upheld 'only upon demonstration that a compelling governmental interest warrants the burden, and that less restrictive means to achieve the government's ends are not available'") (quoting *St. German of Alaska Eastern Orthodox Catholic Church v. U.S.*, 840 F.2d 1087, 1093 (2d Cir. 1988)).

As numerous courts have recognized, this heightened standard is required because government investigative activities may have a chilling effect on the exercise of the above-mentioned First Amendment rights. *See, e.g., White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) ("The investigation by the HUD officials unquestionably chilled the plaintiffs' exercise of their First Amendment right[]" to publicly oppose housing project);

*Donahoe v. Arpaio*, 986 F. Supp. 2d 1091, 1136 (D. Ariz. 2013) (holding that allegedly retaliatory police investigation "'would chill a person of ordinary firmness from engaging in future First Amendment activity'") (quoting *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013)); *Denney v. Drug Enf. Admin.*, 508 F. Supp. 2d 815, 830 (E.D. Cal. 2007) ("[A] physician of ordinary firmness who was only engaging in lawful speech concerning medical marijuana could, in fact, be chilled" in that exercise of First Amendment rights "by a federal investigation"). These concerns are particularly pronounced where, as here, the speech involves labor conditions at an entity involved in administering publicly-funded programs [REDACTED]. (*See* O'Brien Decl. Exh. B; *see also Gardetto*, 100 F.3d at 813 ("The objectives, purposes, and mission of a public university are undoubtedly matters of public concern" for First Amendment purposes); *Kincade v. City of Blue Springs*, 64 F.3d 389, 396 (8th Cir. 1995) (plaintiff's "state[ment] that the City had paid local developers a substantial amount of money for work on the dam that had not been done" was protected from First Amendment liability, because "[w]e generally have held that speech about the use of public funds touches upon a matter of public concern").)

Relatedly, in the civil litigation context, numerous courts have held that, where a plaintiff seeks the identities of anonymous internet speakers whose speech the plaintiff alleges to have been defamatory, the plaintiff must submit evidence making a prima facie case of liability on the speakers' part to compel production of their identities. *See, e.g.*, *Music Group Macao Comm. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 985 (N.D. Cal. 2015) (denying motion to enforce subpoena seeking anonymous speakers' identities because plaintiff "has not shown a 'real evidentiary basis' for its defamation claim against" defendant); *Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969, 975, 977 (N.D. Cal. 2005) (because "[a]llegation and speculation are insufficient" to provide evidentiary basis for, and "[p]laintiff has pointed to no evidence of actual confusion" to support, trademark infringement claim, plaintiff not entitled to anonymous, alleged infringers' identities); *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1097 (W.D.

Wash. 2001) (although defendant "speculates that the users of the . . . website" at issue "may have been engaged in stock manipulation," defendant's "innuendos of stock manipulation do not suffice to overcome the First Amendment rights of the Internet users," and thus subpoena seeking users' identities quashed).[1]

### C. The Government Has Not Shown a Compelling Interest in Obtaining the Reviewers' Identities, or a Substantial Nexus between the Reviewers' Identities and the Government's Investigation

As noted above, the Subpoena contains no information regarding the purpose of the grand jury's investigation (O'Brien Decl. Exh. C, Att.), and the government stated that Fed. R. Crim. P. 6(e) precluded it from providing information to Glassdoor regarding the purpose of the investigation, saying only that the Subpoena was intended to help locate "third party witnesses to certain business practices relevant to our investigation." (*Id.* Exh. E, at 1-2.) Nor does the content of the Reviews themselves reveal anything significant about the purpose of the investigation. There are no obvious commonalities among the eight Reviews the government offered to narrow its subpoena to seek, save for the reviewers' disapproval o[REDACTED] For instance, one of the eight Reviews, dated November 30, 2015, offers only the general criticism that "[REDACTED] all they care about is numbers" (O'Brien Decl. Exh. C, Att., at 5), while another review [REDACTED]

[1] As Glassdoor's business model is based on employees' anonymous provision of information regarding employers, Glassdoor has a sufficient interest in preserving its users' right to speak anonymously to give it standing to assert those users' rights. *See Glassdoor, Inc. v. Super. Ct.*, No. H042824, 2017 WL 944227, *6 (Cal. Ct. App. Mar. 10, 2007) ("Glassdoor has standing to assert [anonymous defendant's] interest in maintaining his anonymity as against [plaintiff's] . . . efforts to compel Glassdoor to identify him"); *McVicker v. King*, 266 F.R.D. 92, 95-96 (W.D. Pa. 2010) (website "clearly has third-party standing to assert the First Amendment rights of individuals anonymously posting to its . . . website," as "[t]he trend among courts which have been presented with this question is to hold that entities such as newspapers, internet service providers, and website hosts may, under the principle of *jus tertii* standing, assert the rights of their readers and subscribers"); *Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782, 785-87 (M.D. Pa. 2008) (newspaper could "assert the legal rights and interests of third party individuals who posted anonymously on [its] . . . website," because "preventing the [newspaper] from asserting the First Amendment rights of anonymous commentators will compromise the vitality of the newspaper's online forums").

Accordingly, Glassdoor is unaware of the reason for the government's request, or why, if at all, the government claims to have a compelling interest in obtaining the identities of Glassdoor's users. Glassdoor likewise does not know whether there is a substantial nexus between the information sought in the Subpoena and the grand jury's investigation. However, the government's suggestion that the Subpoena is meant to locate third-party witnesses raises the concern that the Subpoena is not founded on any suspicion of unlawful activity by the Reviewers, and instead on mere speculation that the Subpoena may locate witnesses to testify on the government's behalf.

Thus, absent the presentation of evidence by the government to the contrary, the Subpoena does not appear to meet the constitutional requirements that must be fulfilled to obtain anonymous speakers' identities. *See In re Grand Jury Investigation*, 706 F. Supp. 2d at 18 (denying motion to compel compliance with grand jury subpoena "seek[ing] records of customer purchases of expressive materials" identifying such customers, "which are presumptively protected by the First Amendment," because the government failed to "demonstrate[] a compelling need for them and a sufficient nexus between the records and the grand jury's investigation"); *In re Grand Jury Subpoena*, 246 F.R.D. at 572-74 (where grand jury subpoena sought identities of Amazon book purchasers as "potential witnesses to [prospective defendant's] alleged fraud and tax evasion schemes by virtue of having completed financial transactions with him," prohibiting the government from learning those purchasers' identities based on the First Amendment, unless they specifically chose to reveal their identities); *see also Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154, 1167-69 (W.D. Wash. Oct. 25, 2010) (because "[t]he First Amendment protects a buyer from having the expressive content of her purchase of books, music, and audiovisual materials disclosed to the government," and state government's subpoena sought the identities of North Carolina-based customers who made purchases from Amazon.com, government was required, but failed, to show that "'a compelling

governmental interest warrants the burden, and that less restrictive means to achieve the government's ends are not available'") (quoting *C.E. Hobbs Found.*, 7 F.3d at 173).

## CONCLUSION

For the foregoing reasons, the Subpoena should be quashed.

Dated: April 4, 2017

**PERKINS COIE LLP**

By: [signature]

Alexis E. Danneman (#030478)
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788

Todd M. Hinnen (WSBA No. 27176)
*(pro hac vice application to be filed)*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

William J. Frimel (CA No. 160287)
Christopher R. Edgar (CA No. 229771)
*(pro hac vice applications to be filed)*
SEUBERT FRENCH FRIMEL & WARNER LLP
1075 Curtis Street
Menlo Park, CA 94025

*Attorneys for Nonparty Glassdoor, Inc.*

Copy of the foregoing emailed and mailed on April 4, 2017, to:

Gary Restaino
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Gary.Restaino@usdoj.gov

[signature]

Alexis E. Danneman (#030478)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
ADanneman@perkinscoie.com

Todd M. Hinnen (WSBA No. 27176)
*(pro hac vice application to be filed)*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
THinnen@perkinscoie.com

William J. Frimel (CA No. 160287)
Christopher R. Edgar (CA No. 229771)
*(pro hac vice applications to be filed)*
SEUBERT FRENCH FRIMEL & WARNER LLP
1075 Curtis Street
Menlo Park, CA 94025
Tel: 650.322.3048
Fax: 650.322.2976
bill@sffwlaw.com

*Attorneys for Nonparty Glassdoor, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: GRAND JURY SUBPOENA ISSUED TO GLASSDOOR, INC. | Case No.<br>(Grand Jury Subpoena No. 16-03-217)<br><br>**DECLARATION OF THOMAS O'BRIEN IN SUPPORT OF MOTION TO QUASH GRAND JURY SUBPOENA PURSUANT TO FED. R. CRIM. P. 17(C)(2)**<br><br>**DOCUMENT SUBMITTED UNDER SEAL**<br>(Declaration consists of 3 pages and 39 pages of exhibits) |

Alexis E. Danneman (#030478)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
ADanneman@perkinscoie.com

Todd M. Hinnen (WSBA No. 27176)
*(pro hac vice application to be filed)*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
THinnen@perkinscoie.com

William J. Frimel (CA No. 160287)
Christopher R. Edgar (CA No. 229771)
*(pro hac vice applications to be filed)*
SEUBERT FRENCH FRIMEL & WARNER LLP
1075 Curtis Street
Menlo Park, CA 94025
Tel: 650.322.3048
Fax: 650.322.2976
bill@sffwlaw.com

*Attorneys for Nonparty Glassdoor, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: GRAND JURY SUBPOENA ISSUED TO GLASSDOOR, INC. | Case No.<br>(Grand Jury Subpoena No. 16-03-217)<br><br>**DECLARATION OF THOMAS O'BRIEN IN SUPPORT OF MOTION TO QUASH GRAND JURY SUBPOENA PURSUANT TO FED. R. CRIM. P. 17(C)(2)** |

THOMAS O'BRIEN declares as follows:

1. I am the Deputy General Counsel of Nonparty Glassdoor, Inc. ("Glassdoor").

2. Glassdoor operates glassdoor.com, which provides a forum for current and former employees of companies to anonymously voice opinions regarding those businesses. Glassdoor.com users also discuss federal, state and local government employers on the site.

3. An employee can anonymously express an opinion about an employer on glassdoor.com by posting a "review," in which the employee assigns the employer between one and five stars in a number of categories, and discusses the employer's "pros and cons." Employees can also share information regarding employers' labor conditions, salaries and job interviewing practices.

4. In order to post reviews or other information to glassdoor.com, users need to provide e-mail addresses to Glassdoor, but those addresses are not publicly displayed on the site. Glassdoor does not compose or edit the employer reviews appearing on the site.

5. To seek pre-enforcement judicial review of a subpoena that seeks to deprive glassdoor.com reviewers of [REDACTED] of their First Amendment right to speak anonymously, and that may have a broader chilling effect on protected expression, Glassdoor brings this motion.

6. Attached as Exhibit A is a true and correct copy of the first viewable page of the reviews of [REDACTED] on glassdoor.com, of which there are 125 at present.

7. Attached as Exhibit B is a true and correct copy of the front page of [REDACTED] website, [REDACTED] as of the date of this declaration.

8. Attached as Exhibit C is a true and correct copy of the subpoena dated March 6, 2017, that the government served upon Glassdoor in regard to [REDACTED].

9. Attached as Exhibit D is a true and correct copy of an e-mail I sent on March 15, 2017 to Gary M. Restaino, Esq., the Assistant United States Attorney in charge of the above-referenced matter.

10. Attached as Exhibit E is a true and correct copy of a letter dated March 21, 2017 from Mr. Restaino to me.

11. Attached as Exhibit F is a true and correct copy of the current terms of use of glassdoor.com, located at https://www.glassdoor.com/about/terms.htm.

12. Attached as Exhibit G is a true and correct copy of a letter dated March 23, 2017 from William J. Frimel, counsel for Glassdoor, to Mr. Restaino.

13. Attached as Exhibit H is a true and correct copy of a letter dated March 24, 2017 from Mr. Restaino to Mr. Frimel.

14. I declare under penalty of perjury that the foregoing is true and correct.

April 4, 2017

Thomas O'Brien
Attorney for Glassdoor, Inc.

Copy of the foregoing emailed and mailed on April 4, 2017, to:

Gary Restaino
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Gary.Restaino@usdoj.gov

# EXHIBIT A











# EXHIBIT B





# EXHIBIT C



COURTESY COPY

**U.S. Department of Justice**

United States Attorney
District of Arizona

Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, AZ 85004-4408

Main: (602) 514-7500
Main Fax: (602) 514-7693
Direct Fax: (602) 514-7450

March 6, 2017

Glassdoor, Inc.
100 Shoreline Highway, Bldg. A
Mill Valley, CA 94941

c/o CT Corporation System
818 W. 7th Street, Suite 930
Los Angeles, CA 90017

Re: Grand Jury Subpoena No. 16-03-217
USAO File No. [redacted]

Dear Custodian of Records:

You have been subpoenaed to appear before the federal grand jury to produce certain documents on Tuesday, April 4, 2017. While you are not required to do so, for your convenience you may, prior to the appearance date, send the records to:

AUSA: GARY M. RESTAINO

Address: United States Attorney's Office
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004

Email:
Telephone:

If you elect to do this, you do not need to appear personally at the appointed time. However, in that case, please complete and return the enclosed certification or one from your company and attach it to the requested records. The grand jury will be notified that these documents have been produced pursuant to a grand jury subpoena.

**Questions concerning the subpoena should be directed to Special Agent**  **with the Department of [redacted], Office of Inspector General at [redacted]**

Finally, I would also like to point out that any disclosure to any other individual regarding the existence of this subpoena could jeopardize an ongoing federal grand jury investigation.

Your continued cooperation in this matter is greatly appreciated.

Sincerely,
ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

GARY M. RESTAINO
Assistant United States Attorney

GMR/lmr
Enclosures

AO 110 (Rev. 06/09) Subpoena to Testify Before a Grand Jury

16-03-217 GMR

Complied
Appeared
Read In

# UNITED STATES DISTRICT COURT

for the

District of Arizona

## SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To: Glassdoor, Inc.
100 Shoreline Highway, Bldg. A
Mill Valley, CA 94941

**YOU ARE COMMANDED** to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: Sandra Day O'Connor U.S. Courthouse<br>401 W. Washington Street<br>Room 306, 3rd Floor<br>Phoenix, Arizona 85003-2151 | Date and Time:<br>April 4, 2017 8:45 a.m. |
|---|---|

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

See attachments

Date: March 6, 2017

*CLERK OF COURT*

s/ Brian D. Karth, Clerk

The name, address, e-mail, and telephone number of the United States attorney, or assistant United States attorney, who requests this subpoena, are:

GARY M. RESTAINO
Assistant U.S. Attorney
40 N. Central Avenue, Suite 1200
Phoenix, AZ 85004-4408
(602) 514-7500 or 1-800-800-2570

Financial Privacy Restrictions Apply

○ Yes ⦿ No



GRAND JURY SUBPOENA No. 16-03-217
USAO File No. [redacted]

ATTACHMENT TO SUBPOENA ISSUED TO:

Glassdoor, Inc.
100 Shoreline Highway, Bldg. A
Mill Valley, CA 94941

c/o CT Corporation System
818 W. 7th Street, Suite 930
Los Angeles, CA 90017

PLEASE PRODUCE:

For the time period **September 1, 2008 to present.**

All "Company Reviews" for [redacted] including all reviewer information. Reviewer information requested includes, but is not limited to, internet protocol addresses and logs associated with all reviews including date and time of post, username, email address, resume, billing information such as first name, last name, credit card information, billing address, payment history and any additional contact information available.

Examples of "Company Reviews" are attached as an Annex.

INSTRUCTIONS FOR PRODUCTION OF RECORDS

I. General

A. Records existing as **Electronically Stored Information (ESI)/Data Transaction File** shall be produced in electronic form and shall include text data and image data held:

1. In your record retention systems; and/or
2. By your technology, data, or other service provider(s).

B. Records that do not exist as ESI may be produced in paper or other original format and may be converted to image or text data and provided as ESI, unless originals are required.

II. Text Data

A. Text data relating to transactions shall be produced within a data file:

1. Using a delimited ASCII text data format; or
2. Using software that can export to a commonly readable, non-proprietary file format without loss of data.

B. Text data files relating to transactions shall include field descriptions (e.g., account number, date/time, description, payee/payor, check number, item identifier, and amount).

III. Image Data

A. Image data shall be produced in graphic data files in a commonly readable, non-proprietary format with the highest image quality maintained.

B. Image data of items associated with transactions (e.g., checks and deposit slips) shall be:

1. Produced in individual graphic data files with any associated endorsements; and
2. Linked to corresponding text data by a unique identifier.

GRAND JURY SUBPOENA No. 16-03-217
USAO File No. [redacted]

IV. Encryption/Authentication

A. ESI may be transmitted in an encrypted container. Decryption keys and/or passwords shall be produced separately at the time the data are produced.

B. Authentication, such as hash coding, may be set by agreement.

C. Affidavits or certificates of authenticity may be included as part of the electronic production.

**Questions concerning the subpoena should be directed to Special Agent [redacted] with the Department of [redacted], Office of the Inspector General at [redacted]**

RECORD FORMAT: Electronic PDF is preferred. Please send electronic compliance directly to [redacted]

Annex: [redacted] Company Review Examples





**DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY**

| Re: Subpoena No. 16-03-217 | Company Reference No. | |
|---|---|---|
| USAO File No. [redacted] | Company Name: | Glassdoor, Inc. |
| Date Served: | Company Address: | 100 Shoreline Highway, Bldg. A<br>Mill Valley, CA 94941 |

I, ____________________________, declare that I am employed by ____________________. I am the duly authorized Custodian of Records for documents and/or information produced under the above reference legal order. The company reserves its right to designate another Custodian as it deems appropriate in the event an actual appearance is required concerning the records produced herein. I certify the records produced herewith are a duplicate of the original(s) and that they were:

A) Made at or near the time of the occurrence, condition or event of the matters set forth by, or from information transmitted by, a person with knowledge of those matters.

B) Kept in the course of regularly conducted business activity.

C) Made as a part of the regular practice of the business activity, by personnel of the business.

The records produced herewith are identified as follows:

☐Signature Cards(s)
☐Statement(s)
☐Cashiers' Check(s)
☐Deposit(s)/Credit(s)/Memos
☐Check(s)/Withdrawal(s)
☐Wire Transfer(s) Forms
☐Other: ____________________________________________________________

Records necessary for compliance may have been limited as indicated below:

☐The company **does not possess any of the records** as described in the above reference legal order.

☐The enclosed records are true copies of the company records in the custodian's possession as described in the above referenced legal order. This constitutes a ☐**final** or ☐**partial** production.

☐The company received notification that **no further production is required**. File closed.

☐Compliance with the above referenced legal order was **limited to the following** through agreement with the requesting party:

☐The company is **unable to provide the following records** as described in the above referenced legal order because of the following:

____________________________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct. (28 U.S.C. § 1746)

Executed on this _______day of ________________, 20____, at ______________________________

______________________________, Custodian of Records, Telephone #___________________

# EXHIBIT D



Hi Gary

Looking forward to chatting with you all at 3:00. In the meantime, I've attached a document that references what we believe to be pertinent case law. I'll also be happy discuss with you how we've resolved informally some prior law enforcement requests.

Regards,
Tom

**Tom O'Brien** | Glassdoor
Deputy General Counsel

Tom – thanks for reaching out. Let's plan on talking on**Wednesday afternoon at 3pm**; we're on the same time zone this time of year. I will circulate a call-in number, and I will also invite my colleagues Andy Stone and Monica Klapper to participate with us.

We'll be in a listening mode for Wednesday, but I will tell you that I'm skeptical that any success you've had quashing civil subpoenas will translate to the federal criminal grand jury regime. I would also offer you a suggestion for our discussion: I've found in the past that in these types of discussions with third party subpoena recipients, it can often be helpful for the recipient to offer some examples of successful litigation in comparable cases, either of the formal variety (an order quashing a subpoena) or of the verifiable informal variety (e.g., recounting a prior discussion you had in which you convinced a prosecutor from another District or jurisdiction to stand down).

Thanks again for reaching out in a timely manner, and we look forward to our discussion on Wednesday afternoon.

Gary

Gary M. Restaino
Assistant U.S. Attorney
United States Attorney's Office
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Direct Line: (602) 514-7756

Dear Ms. Routen,

I am counsel for Glassdoor. We received the attached grand jury subpoena requesting identifying information for authors of all reviews of [redacted] The scope of the request raises issues associated with the First Amendment privilege of anonymous free speech. I would like to schedule a time to speak with Mr. Restaino about the subpoena.

I am generally available tomorrow other than 11am-1pm. And Wednesday any time before 4:30. Can you let me know if Mr. Restaino will be available to speak with me, a time that works for him, and the best number to call? Thank you.

Regards,
Tom

**Tom O'Brien** | Glassdoor
Deputy General Counsel



**Scope of Grand Jury Power**

"[T]he grand jury's 'power is not unlimited.'" *In re Grand Jury Investigation*, 706 F. Supp. 2d at 13 (quoting *United States v. Calandra*, 414 U.S. 338, 346 (1974)). "Its powers are constrained by any valid privilege, whether established by the Constitution, statute, or the common law." *Id*

A grand jury subpoena may be quashed pursuant to Fed. R. Crim. P. 17(c)(2), which provides that, "[o]n motion made promptly, the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." *See, e.g., In re Grand Jury, John Doe No. G.J. 2005-2*, 478 F.3d 581, 585 (4th Cir. 2007) ("Rule 17(c) offers a vehicle for a subpoenaed party to assert a constitutional, statutory, or common-law privilege" in response to grand jury subpoena).

"While what is reasonable" under Rule 17(c)(2) "depends on the context, it is clear that a subpoena may be quashed if it cannot withstand constitutional scrutiny." *In re Grand Jury Investigation*, 706 F. Supp. 2d at 14 (citing *R. Enters.*, 498 U.S. at 299).

**Burden for Pre-empting First Amendment Privilege for Anonymous Free Speech**

"[A]n author's decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 342 (1995).

To obtain the identity of an anonymous speaker via a grand jury subpoena, the government must show "a compelling interest in and a sufficient nexus between the information sought and the subject matter of its investigation." *In re Grand Jury Subpoena Duces Tecum*, 78 F.3d 1307, 1312 (8th Cir. 1996)

*See In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, 706 F. Supp. 2d 11, 18 (D.D.C. 2009) (denying motion to compel compliance with grand jury subpoena "seek[ing] records of customer purchases of expressive materials, which are presumptively protected by the First Amendment," because the government failed to "demonstrate[] a compelling need for them and a sufficient nexus between the records and the grand jury's investigation").

*See also In re Grand Jury Investigation*, 706 F. Supp. 2d at 18 ("In order to survive a First Amendment challenge the government must show that they have a compelling interest in obtaining the sought-after material and that there is a sufficient nexus between the subject matter of the investigation and the information they seek.")

*See id.* at 17-18 (applying this test because, "if the subpoenaed customer records" sought by grand jury, which could be used to identify purchasers of allegedly obscene content, "are given to the Government, it could have a chilling effect on the exercise of Company X's customers' First Amendment rights").

*In re Grand Jury Subpoena to Amazon.com dated Aug. 7, 2006*, 246 F.R.D. 570, 572 (W.D. Wis. 2007) ("If the witness demonstrates a legitimate First Amendment concern raised by the subpoena, then the government must make an additional showing that the grand jury actually needs the disputed information.").

**Overbroadness**

*See In re Grand Jury Subpoena, JK-15-029*, 828 F.3d 1083, 1091 (9th Cir. 2016) ("Because the subpoena was in no way tailored to the investigations being conducted, it included [witness's] purely private emails. [Thus,] the district court had the supervisory power, and responsibility, to quash the vastly overbroad subpoena, and thereby prevent the trampling of [witness's] reasonable expectation of privacy.").

# EXHIBIT E



**U.S. Department of Justice**

United States Attorney
District of Arizona

Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, AZ 85004-4408

Main: (602) 514-7500
Desk: (602) 514-7756

March 21, 2017

*Sent Via E-mail to:* 

Tom O'Brien
Deputy General Counsel
Glassdoor, Inc.
100 Shoreline Highway, Bldg. A
Mill Valley, CA 94941

Re: Grand Jury Subpoena No. 16-03-217

Dear Mr. O'Brien:

Thanks again for reaching out to the government in a timely manner after service of the above-referenced subpoena, and for taking the time to speak with us by telephone on Wednesday, March 15, 2017 about Glassdoor's objection to the subpoena and the process for challenging it in District Court. I had pledged to get back to you by today as to our position.

During our telephone conversation we first discussed the low-hanging fruit, to wit: whether the subpoena is overbroad. I have no reason to think that a subpoena asking for a way to contact all persons who have posted "reviews" of a particular company – [redacted] – is overbroad or burdensome, particularly in the absence of any proffer from you as to the volume of the overall postings and/or the technical difficulties in complying. Indeed, the government endeavored in the initial subpoena to focus your attention in compliance on eight recent exemplar postings between November [redacted], 2015 and January [redacted], 2017. At this time, from an efficiency perspective and in order to try to avoid taking up the District Court's time with a subpoena dispute, the government will narrow its subpoena request to incorporate only those eight postings and their associated reviewer information. I anticipate that production limited to just these eight postings will enable the government to contact those reviewers as third party witnesses to certain business practices relevant to our investigation.

We also of course discussed Glassdoor's main institutional argument, with respect to First Amendment rights of Glassdoor and of the commentators who choose to post anonymously. Glassdoor contends that before production of the

subpoenaed commercial records the government must establish a compelling interest in the records and a nexus between the records and the subject of the investigation. The government disagrees for a variety of reasons, including the presumption of regularity that attaches to grand jury proceedings, and due to the secrecy provisions of Fed. R. Crim. P. 6 that protect parties and witnesses and which militate against discussing the nature and scope of a grand jury investigation with a third-party subpoena recipient.

And this takes us to the process for formally challenging the subpoena. I take it from our conversation that Glassdoor seeks to do so in an efficient and respectful manner. To the extent Glassdoor decides to challenge the subpoena, you should file a motion to quash on or before the response date of Tuesday, April 4, 2017 at 8:45am. In this District you should anticipate filing a hard copy at the Clerk's Office on the first floor of the Federal Courthouse located at 401 W. Washington here in Phoenix. In lieu of a case number parties to a grand jury dispute here in Arizona use the grand jury number, which in this case is "GJ No. 16-03." You will likely receive a random judge draw at the time of filing.

Please feel free to contact me in advance with other questions on procedure or with collaborative suggestions that may assist the parties in efficiently presenting the issue in dispute to the District Court.

Sincerely,

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

*s/ Gary Restaino*

GARY M. RESTAINO
Assistant United States Attorney

# EXHIBIT F

glassdoor

Job Title, Keywords, or Company | Location | Jobs | Search

- About Us
- Press Center
- Terms of Use & Privacy
  - Terms of Use
  - Privacy Policy
- Glassdoor Research

Search for jobs on
glassdoor
Find the right job
for you out of millions
of possibilities.
Find Jobs

# Glassdoor Terms of Use

**Revised: July 12, 2016**

*These Terms of Use are effective immediately for unregistered users and users registering accounts on or after the revision date. They will become effective for users who registered accounts before the revision date thirty (30) days after the date we send email notice of this revision to such users, which effective date generally will be between August 22 and October 25, 2016, depending on the exact date when the email was sent to you.*

These Terms of Use (the "**Terms**") govern your access to and use of our websites, emails and mobile applications ("Glassdoor"). These Terms also include our Privacy and Cookie Policy. By accessing and using Glassdoor, you agree to comply with these Terms. If you are using Glassdoor on behalf of a company or other legal entity, then "you" also means such company or legal entity and you agree to be bound by these Terms even if we have separate agreement with you. You may not use Glassdoor if you do not agree to the version of the Terms posted on Glassdoor at the time you access Glassdoor. (The terms "we" and "us" refer to Glassdoor, Inc., a Delaware corporation.)

*Please note:* These Terms require the use of arbitration on an individual basis to resolve disputes, rather than jury trials or class actions, and also limit the remedies available to you in the event of a dispute.

## 1. Eligibility to Use Glassdoor

A. To access or use Glassdoor, (1) you must be 13 years of age or older and, if under 18 or the age of majority in your jurisdiction, your use of Glassdoor must be under the supervision of a parent or guardian or other responsible adult and (2) you, or (where applicable) the adult supervising your use of Glassdoor, must have the power and authority to enter into these Terms. Except for an employer's authorized use of a Free Employer Account, or as otherwise approved by us, Glassdoor is for your personal, non-commercial use unless you enter into a separate agreement with us for your commercial use. You may not use Glassdoor if we have terminated your account or banned you.

## 2. Your Glassdoor Account

**A. Glassdoor Account.** In order for you to create a Glassdoor account, we require that you provide a valid email address and set up a password. The email you use must be one where we can reach you. In the event we cannot correspond with you via this email address, your submitted content may be rejected and your account may be disabled. Other registration requirements (such as the requirement for individuals to contribute no more than one company review, interview review, or salary details of a current or former job per year) may also apply. You are entirely responsible for maintaining the confidentiality of your password. You agree to notify us immediately if you suspect any unauthorized use of your account or access to your password. You are solely responsible for any and all use of your account. Passwords are subject to cancellation or suspension by Glassdoor at any time.

**B. Social Sign Up and Sign In.** You may be able to register an account and subsequently access Glassdoor through a social networking site, such as Facebook or Google+ ("Social Networking Site"). If you access Glassdoor through a Social Networking Site you agree that we may access, make available through Glassdoor, and store (if applicable) any information, data, text, messages, tags, and/or other materials that you have provided to and stored and made accessible in your Social Networking Site account so that it is available on and through Glassdoor via your account and your profile page. Subject to the privacy settings that you have set with the Social Networking Site account you use to access Glassdoor, personally identifiable information that you post to that Social Networking Site may be displayed on Glassdoor. Please note: your relationship with your Social Networking Sites is governed solely by your agreement with those Social Networking Sites and we disclaim any liability for personally identifiable information that may be provided to us by a Social Networking Site in violation of the privacy settings that you have set with that Social Networking Site account.

## 3. Using Glassdoor

**A. Third-Party Content on Glassdoor.** Content from other users, advertisers, and other third parties is made available to you through Glassdoor. ("Content") means any work of authorship or information, including salaries, company reviews, interview reviews, company photos, employer responses, job ads, employer profile information, advertisements, comments, opinions, postings, resumes, messages, text, files, images, photos, works of authorship, e-mail, data or other materials you find on Glassdoor. Because we do not control such Content, you understand and agree that: (1) we are not responsible for, and do not endorse, any such Content, including advertising and information about third-party products and services, job ads, or the employer, interview and salary-related information provided anonymously by other users; (2) we make no guarantees about the accuracy, currency, suitability, reliability or quality of the information in such Content; and (3) we assume no responsibility for unintended, objectionable, inaccurate, misleading, or unlawful Content made available by users, advertisers, and third parties.

In accordance with Section 230 of the U.S. Communications Decency Act, and any equivalent or similar laws in other jurisdictions which are intended to exclude or limit the liability of online service providers who provide access to user-generated content, we generally cannot be held liable for claims arising from the Content provided by third parties on Glassdoor. For more information please see our Legal FAQs.

We allow users to post content for employers when they have been employed by the employer as a full-time, part-time, contractor, freelancer, independent employee, 1099 (or equivalent), or provide work that is an integral part of the employer's value chain. We also allow users to review the staffing firms that place them in thes[...] workers in these roles as 'employees' with regard to content left on Glassdoor.

Work in HR or Recruiting?

**B. House Rules.** You represent and warrant that you will use Glassdoor solely for lawful purposes in a manner consistent with these Terms and any and all applicable laws, regulations, or other legally enforceable obligations (including contractual obligations) you may have towards us and any third parties. You are solely responsible for any and all Content that is posted through your account on Glassdoor ("**Your Content**"). You agree that by submitting Your Content to Glassdoor, you have reviewed and understood our Community Guidelines. You understand that you may expose yourself to liability if Your Content or other use of Glassdoor violates applicable law or any third-party right.

You agree that you will not:

- Impersonate another person, or his or her email address, or misrepresent your current or former affiliation with an employer;
- Create user accounts under false or fraudulent pretenses; create or use an account for anyone other than yourself; or create multiple active user accounts to post multiple reviews for the same company
- Post Content that you do not own or have the right to post in accordance with the license set forth in these Terms;
- Violate these Terms, the terms of your agreements with us, explicit restrictions set forth in our Community Guidelines, or any applicable law, rule or regulation;
- Post Content that is defamatory, libelous, or fraudulent; that you know to be false or misleading; or that does not reflect your honest opinion and experience;
- Act in a manner that is threatening, racist or bigoted, or is otherwise objectionable (as determined by Glassdoor);
- Promote, endorse or further illegal activities;
- Disclose information in violation of any legally enforceable confidentiality, non-disclosure or other contractual restrictions or rights of any third party, including any current or former employers or potential employers;
- Violate the privacy, publicity, copyright, patent, trademark, trade secret, or other intellectual property or proprietary rights of any third-party;
- Post anything pornographic or sexually explicit in nature, or engage in the exploitation of persons in a sexual or violent manner;
- Solicit personally identifying information from minors;
- Except as expressly approved by us, use Glassdoor for commercial activities and/or promotions such as contests, sweepstakes, barter, pyramid schemes, advertising, affiliate links, and other forms of solicitation;
- Imply a Glassdoor endorsement or partnership of any kind without our express written permission;
- Send messages in violation of the USA CAN-SPAM Act or any other applicable anti-spam law;
- Introduce software or automated agents to Glassdoor, or access Glassdoor so as to produce multiple accounts, generate automated messages, or to scrape, strip or mine data from Glassdoor without our express written permission;
- "Frame" or "mirror" or otherwise incorporate part of Glassdoor into any website, or "deep-link" to any portion of Glassdoor without our express written permission.
- Copy, modify or create derivative works of Glassdoor (including Glassdoor Content) without our express written permission;
- Copy or use the information, content, or data on Glassdoor in connection with a competitive service (as determined by Glassdoor);
- Sell, resell, rent, lease, loan, trade or otherwise monetize access to Glassdoor or any Glassdoor Content without our express written permission;
- Interfere with, disrupt, modify, reverse engineer, or decompile any data or functionality of Glassdoor;
- Interfere with, disrupt, or create an undue burden on Glassdoor or the networks or services connected to Glassdoor;
- Introduce any viruses, Trojan horses, worms, time bombs, cancelbots, corrupted files, or similar software to Glassdoor;
- Attempt to circumvent any security feature of Glassdoor; or
- Expose us or our users to any harm or liability.

**C. Applying on Glassdoor.** Some of our job postings allow you to complete and submit your application on Glassdoor. We provide this service by working directly with an employer or by searching the Internet for the best contact information we can find for an employer. When you click the "Apply" button to submit an application on Glassdoor, we send your application to the most appropriate contact information we have on file for that employer.

While we endeavor to make this service the best it can be, employer websites are not controlled by Glassdoor, and we cannot guarantee that your application will be properly received and logged by the third-party employer website upon transmission. If you have any reason to think your application was not received by an employer, we suggest you contact them directly to confirm.

Work in HR or Recruiting?

**C. Links to Third-Party Websites.** Glassdoor may contain links to third-party websites placed by us as a service to those interested in this information, or posted by other users. Your use of all such links to third-party websites is at your own risk. We do not monitor or have any control over, and make no claim or representation regarding third-party websites. To the extent such links are provided by us, they are provided only as a convenience, and a link to a third-party website does not imply our endorsement, adoption or sponsorship of, or affiliation with, such third-party website. When you leave Glassdoor, our terms and policies do not govern your use of third-party websites.

## 4. Special Provisions Applicable To Employers

**A. Posting Jobs on Glassdoor.** You may not post any job ad that:

- Does not comply with the applicable laws or regulations of the state and country where the job is to be performed, including laws relating to labor and employment, equal employment opportunity and employment eligibility requirements, data privacy, data access and use and intellectual property;
- Contains false information or solicits employees by intentional misrepresentation, such as, misrepresentation of the terms of employment, the hiring entity, or the identity of the poster;
- Requires an application fee or up-front or periodic payments; requires recruitments of others; resembles a multi-level marketing scheme, franchise, pyramid scheme, "club membership", distributorship or sales representative agency arrangement; or only pays commissions (except where the listing makes clear that the available job pays commission only and clearly describes the product or service that the job seeker would be selling);
- Involves any screening requirement where such screening requirement is not an actual and legal requirement of the advertised position;
- Contains any logo or brands, or link to website, other than your own or those of any entity for which you are authorized to submit job ads;
- Contains multiple job openings in a single job ad (unless you've purchased a service that permits this);
- Discriminates against applicants on the basis of gender, race, religion, sexual orientation, age, disability, or any other ground(s) prohibited by applicable law, in each case as determined in Glassdoor's reasonable discretion.

**B. Reviews on Glassdoor.** You may not offer incentives in exchange for company or interview reviews. You may not trade reviews with other employers. We will remove reviews where we have evidence that users were compensated to leave reviews.

You may not coerce employees to leave reviews. Coercion includes asking employees to provide proof to an employer that they wrote a review whether or not that proof includes the content of the review itself.

If you are a multi-level marketing company, you agree that you have reviewed and will abide by the Glassdoor Guidelines for Multi-Level Marketing Companies.

## 5. Special Provisions Applicable to Advertisers

This provision applies to all advertisers, including employers who purchase Job Ads or display ads. Unless we agree otherwise, you may not use or otherwise process data collected or derived from ads ("**Ad Data**") for any purpose (including retargeting, building or augmenting user profiles, allowing piggybacking or redirecting with tags, or combining with data across multiple advertisers' campaigns) other than to assess the performance and effectiveness of your campaigns on an aggregate and anonymous basis. You may not, and you may not permit a third-party to, transfer or sell any Ad Data to, or use Ad Data in connection with, any ad network, ad exchange, data broker, or other party not acting on behalf of you and your campaigns. You may use information provided directly to you from users if you provide clear notice to and obtain consent from those users and comply with all applicable laws and industry guidelines including those applicable to data protection.

## 6. Enforcement by Glassdoor

**A. Removal of Content.** While Glassdoor has no obligation to do so, Glassdoor reserves the right to review and delete (or modify) any Content that we believe, in our sole discretion, violates these Terms or other applicable policies posted on Glassdoor (including our Community Guidelines), or that we deem, in our sole discretion, inappropriate. If you see any Content on Glassdoor that you believe violates our policies, you may report that Content by clicking on an applicable link adjacent to that Content (e.g. links titled: "Inappropriate" or "Flag Review") or by contacting us here. Once notified, we will review the Content and consider whether to remove or modify it. Please note: Our interpretation of our policies and the decision whether or not to edit or remove Content is within our sole discretion. You understand and agree that if we choose not to remove or edit Content that you find objectionable, that decision will not constitute a violation of these Terms or any agreement we have with you. For more information please see our Legal FAQs.

**B. Copyright Policy.** Please see our Copyright Complaint Policy for information about copyright and trademark disputes.

**C. Other Enforcement Actions.** While we have no obligation to do so, we reserve the right to investigate and take appropriate action in our sole discretion against you if you violate these Terms, including without limitation: removing Content from Glassdoor (or modifying it); suspending your rights to use Glassdoor; terminating your membership and account; reporting you to law enforcement, regulatory authorities, or administrative bodies; and taking legal action against you.

**D. Defending Our Users.** While we have no obligation to do so, we reserve the right, to the fullest extent permitted by applicable law, to take appropriate action to protect the anonymity of our users against the enforcement of subpoenas or other information requests that seek a user's electronic address or identifying information.

## 7. Rights to Your Content

We do not claim ownership in any Content that you submit to Glassdoor, but to be able to legally provide Glassdoor to our users, we have to have certain rights to use such Content in connection with Glassdoor, as set forth below. By submitting any Content to Glassdoor, you hereby grant to us an unrestricted, irrevocable, perpetual, non-exclusive, fully-paid and royalty-free, license (with the right to sublicense through unlimited levels of sublicenses) to use, copy, perform, display, create derivative works of, adapt and distribute such Content in any and all media (now known or later developed) throughout the world. To the greatest extent permitted by applicable law, you hereby expressly waive any and all of your moral rights applicable to Glassdoor's exercise of the foregoing license. No compensation will be paid with respect to the Content that you post through Glassdoor. You should only submit Content to Glassdoor that you are comfortable sharing with others under the terms and conditions of these Terms.

## 8. Rights to Glassdoor Content

Glassdoor contains Content provided by us and our licensors. We and our licensors (including other users) own and retain all proprietary (including all intellectual property) rights in the Content we each provide and Glassdoor owns and retains all property rights in Glassdoor. If you are a user, we hereby grant you a limited, revocable, non-sublicensable license under the intellectual property rights licensable by us to download, view, copy and print Content from Glassdoor solely for your personal use in connection with using Glassdoor. Except as provided in the foregoing, you agree not to: (1) reproduce, modify, publish, transmit, distribute, publicly perform or display, sell, adapt or create derivative works based on Glassdoor or the Content (excluding Your Content); or (2) rent, lease, loan, or sell access to Glassdoor. Glassdoor ® is a registered trademark of Glassdoor, Inc. The trademarks, logos and service marks ("Marks") displayed on Glassdoor are our property or the property of third parties. You are not permitted to use these Marks without our prior written consent or the consent of the third party that owns the Mark.

## 9. Indemnity

You agree to defend, indemnify, and hold us and our subsidiaries and our and their respective officers, directors, board members, board advisors, employees, partners, agents successors and assigns (collectively, the "**Glassdoor Group**") harmless from any loss, liability, claim, or demand, including reasonable attorneys' fees, made by any third party due to or otherwise arising from your use of Glassdoor, including due to or arising from your breach of any provision of these Terms.

## 10. Disclaimers and Limitation on Liability

The disclaimers and limitations on liability in this section apply to the maximum extent allowable under applicable law. Nothing in this section is intended to limit any rights you have which may not be lawfully limited.

You are solely responsible for your interactions with advertisers and other users and we are not responsible for the activities, omissions, or other conduct, whether online or offline, of any advertiser or user of Glassdoor. We are not responsible for any incorrect, inaccurate, or unlawful Content (including any information in profiles) posted on Glassdoor, whether caused by users or by any of the equipment or programming associated with or utilized in Glassdoor. We assume no responsibility for any error, omission, interruption, deletion, defect, delay in operation or transmission, communications line failure, theft or destruction or unauthorized access to, or alteration of, any communication with advertisers or other users. We are not responsible for any problems or technical malfunction of any hardware and software due to technical problems on the Internet or on Glassdoor or combination thereof, including any injury or damage to users or to any person's computer related to or resulting from participation or downloading materials in connection with Glassdoor. Under no circumstances shall we be responsible for any loss or damage resulting from use of Glassdoor or from any Content posted on Glassdoor or transmitted to users, or any interactions between users of Glassdoor, whether online or offline.

Glassdoor is provided "as-is" and as available. We expressly disclaim any warranties and conditions of any kind, whether express or implied, including the warranties or conditions of merchantability, fitness for a particular purpose, title, quiet enjoyment, accuracy, or non-infringement. We make no warranty that: (1) Glassdoor will meet your requirements; (2) Glassdoor will be available on an uninterrupted, timely, secure, or error-free basis; or (3) the results that may be obtained from the use of Glassdoor will be accurate or reliable.

You hereby release the Glassdoor Group from any and all claims, demands, and losses, damages, rights, claims, and actions of any kind that are either directly or indirectly related to or arises from: (1) any interactions with other users of Glassdoor, or (2) your participation in any of our offline events.

IN NO EVENT SHALL THE GLASSDOOR GROUP BE LIABLE TO YOU OR ANY THIRD PARTY FOR ANY LOST PROFIT OR ANY INDIRECT, CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, SPECIAL, OR PUNITIVE DAMAGES ARISING FROM YOUR USE OF GLASSDOOR, EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, WHERE PERMITTED BY APPLICABLE LAW, YOU AGREE THAT THE GLASSDOOR GROUP'S LIABILITY TO YOU FOR ANY DAMAGES ARISING FROM OR RELATED TO YOUR USE OF GLASSDOOR (FOR ANY CAUSE WHATSOEVER AND REGARDLESS OF THE FORM OF THE ACTION), WILL AT ALL TIMES BE LIMITED TO ONE HUNDRED U.S. DOLLARS ($100).

You acknowledge that you are familiar with the provisions of Section 1542 of the California Civil Code, which provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." You hereby expressly waive and relinquish all rights and benefits under Section 1542 of the California Civil Code and any law or legal principle of similar effect in any jurisdiction with respect to the releases and/or discharges granted herein, including but not limited to the releases and/or discharges of unknown claims.

## 11. Termination



These Terms remain in effect while you use Glassdoor and, for registered users, as long as your account remains open. You may delete your account at any time. We may suspend or terminate your account or your access to parts of Glassdoor, without notice to you, if we believe that you have violated these Terms. All provisions of these Terms shall survive termination or expiration of these Terms except those granting access to or use of Glassdoor. We will have no liability whatsoever to you for any termination of your account or related deletion of your information.

## 12. Changes to Terms

We may revise these Terms from time by posting an updated version on Glassdoor and you agree that the revised Terms will be effective thirty (30) days after the change is posted. Your continued use of Glassdoor is subject to the most current effective version of these Terms.

## 13. Third-Party Discovery

You agree to waive your right to file a pre-suit discovery proceeding seeking a user's identifying information from Glassdoor. If you intend to propound discovery seeking a user's identifying information, you agree to do so pursuant to a valid California subpoena, properly issued in connection with an active lawsuit and properly served on our registered agent in California at *Glassdoor, Inc., c/o CT Corporation, 818 W Seventh Street, Los Angeles, CA 90017*. You further agree that discovery proceedings arising from such subpoenas shall be brought and resolved exclusively in the state courts located within Marin County, California or the federal courts in the Northern District of California, as appropriate, and you agree to submit to the personal jurisdiction of each of these courts for such discovery proceedings.

## 14. Dispute Resolution

**PLEASE READ THIS CAREFULLY. IT AFFECTS YOUR RIGHTS. YOU AGREE THAT BY ENTERING INTO THIS AGREEMENT, YOU AND GLASSDOOR ARE EACH WAIVING THE RIGHT TO TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION. YOU AND GLASSDOOR AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED.**

**A. Governing Law.** This Agreement and any and all claims, disputes, or other legal proceedings by or between you or us, including but not limited to any such claims or disputes that are in any way related to or arising under this Agreement or your access to or use of Glassdoor, shall be governed by the laws of the State of California without giving effect to any conflict-of-laws principles that may otherwise provide for the application of the law of another jurisdiction. For any claim, dispute, or other legal proceeding not subject to the "Agreement to Arbitrate" provision below, the claim or dispute shall be brought and litigated exclusively in the state courts located within Marin County, California or the federal courts in the Northern District of California, as appropriate, and you agree to submit to the personal jurisdiction of each of these courts for the purpose of litigating such claims or disputes.

**B. Agreement to Arbitrate.** If you reside in the United States, subject to the *Exceptions to Arbitration* set forth below, you and Glassdoor each agree that any and all disputes between consumer users of Glassdoor and Glassdoor arising under or related in any way to this Agreement and such users' use of Glassdoor must be resolved through binding arbitration as described in this section. With the exception of the prohibition on class arbitrations set forth in this "Dispute Resolution" section, if an arbitrator or court decides that any part of this agreement to arbitrate is unenforceable, the other parts of this Agreement to Arbitrate will still apply.

*Exceptions to Arbitration*. This Agreement to Arbitrate will not apply to the following: (a) small claims court cases that qualify; (b) legal proceedings that involve efforts to obtain user-identifying information; (c) any legal proceedings brought against any of the Glassdoor Group by companies or other legal entities; and (d) a party's right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights. If, for some reason, the prohibition on class arbitrations set forth in this Dispute Resolution section cannot be enforced, then the entirety of this Agreement to Arbitrate will not apply. Where this Agreement to Arbitrate does not apply, the remainder of this Agreement and the Dispute Resolution section will continue to apply.

*Informal Dispute Resolution*. If either of us intends to seek arbitration under the agreement, the party seeking arbitration must first notify the other party of the dispute in writing at least 30 days in advance of initiating arbitration. Notice to Glassdoor should be sent to the Litigation Department, Glassdoor Inc., 100 Shoreline Highway, Mill Valley, CA 94941. If you have an account on Glassdoor, notice to you will be sent to the email address associated with your account. The notice of dispute ("Notice") must (a) describe the nature and basis of the claim or dispute; and (b) set forth the specific relief sought. You may download or copy a form Notice here. If Glassdoor and you do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or Glassdoor may commence formal proceeding.

*Arbitration Procedure*. The arbitration will be governed by the Consumer Arbitration Rules of the American Arbitration Association ("AAA"), if applicable, as modified by this section. The AAA's rules and a form for initiating the proceeding are available at www.adr.org. Any settlement offer made by you or Glassdoor shall not be disclosed to the arbitrator. Unless otherwise required by the applicable arbitration rules, the arbitration shall be held in San Francisco, California. For any claim where the total amount of the award sought is $10,000 or less, you and Glassdoor may elect to have the arbitration conducted by telephone or based solely on written submissions, which election shall be binding on you and Glassdoor subject to the arbitrator's discretion to require an in-person hearing. In cases where an in-person hearing is held, you or Glassdoor may attend by telephone, unless the arbitrator requires otherwise. The arbitrator will decide the substance of all claims in accordance with applicable law, including recognized principles of equity, and will honor all claims of privilege recognized by law. The arbitrator shall not be bound by rulings in prior arbitrations involving different users, but is bound by rulings in prior arbitrations involving the same Glassdoor user to the extent required by applicable law. The arbitrator's award shall be final and binding and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

4/3/2017 Terms of Use | Glassdoor

*Opt-Out Procedure.* IF YOU ARE A GLASSDOOR USER, YOU CAN CHOOSE TO REJECT THIS AGREEMENT TO ARBITRATE ("OPT-OUT") BY MAILING US A WRITTEN OPT-OUT NOTICE ("OPT-OUT NOTICE"). THE OPT-OUT NOTICE MUST BE POSTMARKED NO LATER THAN 30 DAYS AFTER THE DATE THESE TERMS FIRST BECOME APPLICABLE TO YOU. YOU MUST MAIL THE OPT-OUT NOTICE TO GLASSDOOR INC, ATTN: LITIGATION DEPARTMENT, RE: OPT-OUT NOTICE, 100 SHORELINE HIGHWAY, MILL VALLEY, CALIFORNIA 94941.

For your convenience, we are providing an Opt-Out Notice form you must complete and mail to opt out of your agreement to arbitrate. You must complete the Opt-Out Notice form by providing the information called for in the form, including your name, address (including street address, city, state and zip code), and the email address(es) associated with the Glassdoor account(s) to which the opt-out applies. You must sign the Opt-Out Notice for it to be effective. This procedure is the only way you can opt out of this Agreement to Arbitrate. If you opt out of the Agreement to Arbitrate, all other parts of the Agreement and its Dispute Resolution section will continue to apply to you. Opting out of this agreement to arbitrate has no effect on any previous, other, or future arbitration agreements that you may have with us.

*Changes to the Agreement to Arbitrate.* Notwithstanding any provision in these Terms to the contrary, you and we agree that if we make any changes to this "Arbitration" section (other than an change to any referenced notice address or site link) in the future, that change will not apply to any claim that was filed in a legal proceeding prior to the effective date of the change. The change will apply to all other disputes or claims governed by this Arbitration section that have arisen or may arise between you and Glassdoor. We will notify you of changes to this Arbitration section by posting the changes on Glassdoor at least 30 days before the effective date of the changes and by email. If you do not agree to these changed terms, you may close your account within the 30 day period and you will not be bound by the changes.

## 15. Other.

Except as specifically stated in another agreement we have with you, these Terms constitute the entire agreement between you and us regarding the use of Glassdoor and these Terms supersede all prior proposals, negotiations, agreements, and understandings concerning the subject matter of these Terms. You represent and warrant that no person has made any promise, representation, or warranty, whether express or implied, not contained herein to induce you to enter into this agreement. Our failure to exercise or enforce any right or provision of the Terms shall not operate as a waiver of such right or provision. If any provision of the Terms is found to be unenforceable or invalid, then only that provision shall be modified to reflect the parties' intention or eliminated to the minimum extent necessary so that the Terms shall otherwise remain in full force and effect and enforceable. To the extent allowed by law, the English version of this Agreement is binding and the translations are provided for convenience only. The Terms, and any rights or obligations hereunder, are not assignable, transferable or sublicensable by you except with Glassdoor's prior written consent, but may be assigned or transferred by us without restriction. Any attempted assignment by you shall violate these Terms and be void. The section titles in the Terms are for convenience only and have no legal or contractual effect; as used in the Terms, the word "including" means "including but not limited to."

Please contact us with any questions regarding these Terms by contacting us here. To review the previous terms, click here.

Glassdoor has millions of jobs plus salary information, company reviews, and interview questions from people on the inside making it easy to find a job that's right for you.

Glassdoor
About Us
Awards & Trends
Blog
Research

Employers
Get a Free Employer Account
Talk To Sales
Post a Job

Community
Help Center
Guidelines
Terms of Use
Privacy & Cookies

Work With Us
Job Boards
Advertisers
Developers
Careers

United States

Browse by: Companies Jobs Locations

Copyright © 2008–2017, Glassdoor. Glassdoor® is a registered trademark of Glassdoor, Inc.

Work in HR or Recruiting?

https://www.glassdoor.com/about/terms.htm 6/6



# EXHIBIT G



Bill Frimel
1075 Curtis Street
Menlo Park, CA 94025

March 23, 2017

*Via E-Mail Only*

Gary M. Restaino, Esq.
Assistant United States Attorney
District of Arizona
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, AZ 85004-4408

**Re: Grand Jury Subpoena No. 16-03-217 to Glassdoor, Inc.**

Dear Mr. Restaino:

I write on behalf of Glassdoor, Inc. ("Glassdoor") in response to your letter to Tom O'Brien dated March 21, 2017. I will respond to the points in your letter in the order in which they were made.

First, Glassdoor appreciates the government's offer to narrow its subpoena to seek user information from Glassdoor with regard to, as your letter states, "eight recent exemplar postings between November , 2015 and January , 2017," rather than all of the 125 reviews of currently on glassdoor.com. However, that offer does not resolve Glassdoor's concerns regarding the grand jury subpoena's infringement on the First Amendment right of Glassdoor's users to speak anonymously. Glassdoor is expressly committed to protecting its users' right to anonymous expression. It is unclear from the government's communications with Glassdoor what the reviews selected by the government are "exemplars" of, and in the absence of any evidence of a substantial relationship between the identities of the reviewers at issue and the grand jury's investigation, Glassdoor must continue to maintain its objections to the subpoena.

Second, your letter characterizes Glassdoor's records containing information concerning the reviewers' identities as "commercial records," apparently implying that the contents of those records are commercial speech and thus entitled to a lower level of First Amendment protection. Commercial speech is "speech which does no more than propose a commercial transaction." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983). Identifying information concerning the anonymous reviewers obviously does not fall into this category. Nor do the reviews those individuals wrote, as the reviews do not advocate a commercial transaction with or any

competing business. *See, e.g., Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013) ("The statements posted on the Esquire.com 'Politics Blog' cannot plausibly be viewed as commercial speech," because plaintiffs "do not allege that Esquire is selling or promoting a competing book");[1] *Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL 1191267, *6 (S.D. Fla. Mar. 16, 2015) (because blog posts at issue "clearly state their intent to raise public awareness about issues pertaining to Plaintiffs' treatments, a goal in line with [authors'] . . . educational mission," "it cannot be said that the articles relate 'solely' to the economic interests of the" authors, and thus commercial speech standard did not apply).

Third, your letter asserts that the government should receive the identifying information being sought based on the "presumption of regularity that attaches to grand jury proceedings." As authorities Glassdoor has cited make clear, however, that presumption can be overridden where the government seeks the identities of individuals anonymously engaged in expressive activity without showing a substantial relationship between those persons' identities and the grand jury's investigation. *See, e.g., In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, 706 F. Supp. 2d 11 (D.D.C. 2009) (although "[t]he grand jury's charge is to investigate whether a crime has been committed and to make any and all inquiries until it is satisfied one way or the other," "a subpoena may be quashed if it cannot withstand constitutional scrutiny," and grand jury subpoena seeking identities of purchasers of adult videos violated purchasers' "First Amendment right to receive them anonymously"); *In re Grand Jury Subpoena to Amazon.com Dated August 7, 2006*, 246 F.R.D. 570, 572 (W.D. Wis. 2007) (although "we start with the presumption that the grand jury issued the challenged subpoena to Amazon in good faith in an attempt to obtain relevant information," under the First Amendment, government could not obtain identities of Amazon book purchasers unless they consented to provide their identities).

Fourth, your letter states that the government need not show a substantial relationship between the reviewers' identities and the grand jury's investigation based on "the secrecy provisions of Fed. R. Crim. P. 6 that protect parties and witnesses and which militate against discussing the nature and scope of a grand jury investigation with a third-party subpoena recipient." Glassdoor understands that Rule 6(e) places restrictions on the government's ability to discuss the grand jury's investigation with third-party subpoena recipients, and that, if the government continues to seek Glassdoor's users' identities, this issue may need to be resolved either in a nonpublic proceeding or via evidence submitted in camera to the Court.

Notwithstanding the above, as Mr. O'Brien advised you by phone, Glassdoor would be willing to contact the authors of the eight "exemplar" reviews specified in your letter to determine whether they would be willing to provide their identifying information to the government, and provide that information with respect to any reviewers who gave their consent. The court in *In re Grand Jury*

---

[1] Although *Farah* concerned whether the speech at issue was commercial speech for the purposes of the Lanham Act, "[f]or a statement to constitute 'commercial speech'" under the Lanham Act, "it must at least fall within the meaning of 'commercial speech' pursuant to First Amendment jurisprudence." *Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL 1191267, *5 (S.D. Fla. Mar. 16, 2015).

*Subpoena to Amazon.com Dated August 7, 2006* required a similar procedure to protect the First Amendment rights of any Amazon.com book purchasers unwilling to volunteer their personal information to the government. *See In re Grand Jury Subpoena to Amazon.com Dated August 7, 2006*, 246 F.R.D. at 573-74 ("Essentially, Amazon will send a letter to a subset of the 24,000 purchasers, advising them in general terms of the government's investigation and the customer's potential role in it. . . . This packet will allow any used book buyer who chooses to cooperate with the investigation to contact the government and arrange an interview. Anyone who wishes not to participate in this exercise, by virtue of his or her silence, will be left alone, and the government will never learn that person's identity or the titles of materials he/she purchased from D'Angelo through Amazon."). Please let me know if the government is amenable to this proposal.

Very truly yours,

Bill Frimel

# EXHIBIT H



**U.S. Department of Justice**

United States Attorney
District of Arizona

Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, AZ 85004-4408

Main: (602) 514-7500
Desk: (602) 514-7756

March 24, 2017

*Sent Via E-mail to:* .

Bill Frimel
Seubert French Frimel & Warner
1075 Curtis Street
Menlo Park, CA 94025

Re: Grand Jury Subpoena No. 16-03-217

Dear Mr. Frimel:

Thank you for your correspondence of March 23, 2017, which follows up our letter of March 21, 2017 and a productive conversation with Tom O'Brien last week. As we understand it, Glassdoor's institutional position militates against its compliance with the grand jury subpoena absent either: 1) our agreement to your proposal that we delegate to Glassdoor our initial contact with the eight commentators; or 2) a decision of the District Court denying a motion to quash. We respect that you have developed your institutional position in good faith, but we disagree with your legal analysis. Accordingly, as to the delegation of contact rights, we reject your proposal. And we will await your motion to quash so that a District Court here in Arizona can make an informed decision on the law and the facts of this case.

Sincerely,

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

GARY M. RESTAINO
ANDREW C. STONE
Assistant United States Attorneys

✓ FILED ___ LODGED
___ RECEIVED ___ COPY
APR 0 6 2017
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

In Re: Grand Jury Subpoena Issued to Glassdoor, Inc.

Case No.
(Grand Jury Subpoena No. 16-03-217)

**ORDER**

**(SEALED)**

Pending before the Court is a Motion to Quash Grand Jury Subpoena Pursuant to Fed.R.Crim.P. 17(c)(2). **IT IS ORDERED** that the Government shall file a Response thereto by no later than April 14, 2017. No Reply will be allowed.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall provide all counsel a copy of this order by U.S. Postal Mail.

Dated this 5th day of April, 2017.

Honorable Diane J. Humetewa
United States District Judge

COPY

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
GARY M. RESTAINO
Arizona State Bar No. 017450
Gary.Restaino@usdoj.gov
ANDREW C. STONE
Arizona State Bar No. 026543
Andrew.Stone@usdoj.gov
Assistant U.S. Attorneys
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for the United States*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

In re: Grand Jury Subpoena Issued to Glassdoor, Inc.

GJ Subpoena No. 16-03-217
(Assigned to Honorable Diane J. Humetewa United States District Judge)

**GOVERNMENT'S RESPONSE IN OPPOSITION TO MOVANT'S MOTION TO QUASH**

**(Filed Under Seal)**

The United States of America responds in opposition to Glassdoor's motion to quash. The government has served a grand jury subpoena seeking information that would enable it to identify and speak with eight anonymous individuals who posted adverse information on an electronic bulletin board about business practices at issue in a criminal fraud investigation. Glassdoor objects, and demands that this Court inquire deeply into the nature of the investigation. Because the information contained within the four corners of the subpoena and other averrals of counsel establish a connection between a pre-existing investigation and the improprieties described by the anonymous reviewers, Glassdoor cannot meet its heavy burden to justify an intrusion into the grand jury's investigative authority. Consistent with *Branzburg v. Hayes*, 408 U.S. 665 (1972) and several subsequent Ninth Circuit cases, this Court should deny the motion to quash and instead order Glassdoor to comply.

## STATEMENT OF FACTS

### A. Glassdoor Offers an Internet-Based Forum for Employees and Employers

Glassdoor.com provides an opportunity for current and former employees of companies to post "reviews" including the "pros" and "cons" of employment. (*See generally* Mot. at 3-5 and O'Brien Decl. ("Decl.") at ¶¶ 2-4.) Glassdoor also provides significant services to employers. "For employers, Glassdoor offers effective recruiting and employer branding solutions via Glassdoor for Employers. We help thousands of clients and partners promote their employer brand to candidates researching them and advertise their jobs to ideal candidates who may not be aware of them."[1]

In its Terms of Use, Glassdoor purports to protect the anonymity of the reviewers by reserving the right to take appropriate action "to the fullest extent permitted by applicable law." (Decl. at Ex. F, ¶ 6(D).) Glassdoor's privacy policy is more circumspect as to the sharing of information, and it implicitly recognizes the different types of subpoenas. "Our general procedure with respect to *civil* subpoenas requesting user data is to require a court order, binding on Glassdoor, before we release such information."[2] Glassdoor does not purport to offer anonymity protections with respect to grand jury subpoenas.

### B. The Government Is Investigating Contracting Fraud

On March 7, 2017, the government served a grand jury subpoena on Glassdoor seeking information that could enable it to contact current and former employees who had written reviews about [redacted] (Decl. at Ex. C.) The subpoena included eight exemplar reviews posted in the fourteen-month span from November [redacted], 2015 through January [redacted], 2017, and the government has explicitly narrowed the scope of

///

[1] *See* https://www.glassdoor.com/about/index_input.htm (retrieved April 7, 2017), attached as Ex. I.

[2] *See* https://www.glassdoor.com/about/privacy-full.htm (retrieved April 7, 2017) (emphasis added), attached as Ex. J.

the subpoena to demand information as to only those eight reviews. From that subpoena, Glassdoor and the Court may take notice of the nature of this investigation.

The cover letter to the subpoena identifies the investigating agency as the Office of Inspector General for the Department of [redacted] (Decl. at Ex. C.) The Inspector General Act of 1978 establishes an Inspector General in each federal agency to "prevent and detect fraud and abuse" in federal programs, 5 U.S.C. App. 3 § 2, and as part of that authority an Inspector General may refer an investigation to the U.S. Attorney's Office for a grand jury investigation, as happened here.

An examination of possible fraud in the administration of [redacted] is squarely within the scope of the Inspector General Act, and the statutes underlying the investigation include but are not limited to wire fraud in violation of 18 U.S.C. § 1343 and misuse of government funds, in violation of 18 U.S.C. § 641. The government avers that the Glassdoor reviews played no role in the Inspector General's decision to open an investigation. The eight reviews at issue nonetheless offer common employee insights into [redacted] and its administration of the federal contracts, and those reviewers are third party witnesses to potential unlawful conduct within the scope of the Inspector General's pre-existing investigation. The government has no way to identify those reviewers outside of subpoena compliance, and those reviewers would be expected to inform the existing investigation specifically about [redacted] [redacted]" (post of [redacted] 2016) and more generally about the [redacted] [redacted] practices that maximize profit numbers for [redacted] which are reflected in each of the eight reviews. (Decl. at Ex. C, Annex.)

Beyond the four corners of the subpoena and the government's averral that the Inspector General opened its investigation prior to reading reviews through Glassdoor, the

government declines in this Response to identify any subjects of the grand jury investigation, or to describe the predication that led it to open the investigation, or to opine on the relative strength of its investigation. Disclosure of such information in this forum would be inconsistent with the grand jury's role "to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991) (reversing the quashal of a grand jury subpoena). To the extent this Court deems it necessary to know more about the status of the underlying criminal investigation, the Supreme Court in *R. Enterprises* suggested an *in camera* review procedure, 498 U.S. at 302, and the government will submit such information *in camera* upon request.

## ARGUMENT

### I. The Court Should Follow the *Branzburg* Good Faith Test and Order Glassdoor to Comply with the Subpoena

Glassdoor argues that the government must show a compelling interest in and substantial nexus to the reviewers' identities before Glassdoor is required to provide the information. Glassdoor is wrong. The Supreme Court, in *Branzburg v. Hayes*, 408 U.S. 665, 680, 707 (1972), squarely rejected the compelling interest/nexus test urged by Glassdoor, in favor of a bad faith test. The *Branzburg* test has since been followed numerous times over the past decades by the Ninth Circuit.

#### A. Grand Jury Subpoenas Are Presumed Legitimate

Grand jury subpoenas maintain a presumption of legitimacy. "[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *R. Enterprises, Inc.*, 498 U.S. at 300-01; *see also United States v. Calandra*, 414 U.S. 338, 343 (1974 (the grand jury "deliberates in secret and may determine alone the course of its inquiry."). Although a trial subpoena requires that the information sought be relevant to the offense charged, and admissible, *United States v. Nixon*, 418 U.S. 683, 700 (1974), the nature of the grand jury militates against any inquiry in subpoenas duces tecum issued by the grand jury. *R. Enterprises, Inc.*, 498 U.S. at 300.

**B. Just Like a News Reporter Protecting a Source, Glassdoor Must Demonstrate Bad Faith to Block Compliance with a Grand Jury Subpoena**

*Branzburg* rebuffs Glassdoor's argument that subpoenas for commercial records involving anonymous, apolitical Internet posts are subject to a constitutional exception. In *Branzburg*, the Supreme Court held that grand jury subpoenas involving First Amendment rights did not require a judicial authorization before compliance, unless the party seeking to quash the subpoena demonstrated bad faith by the government. That decision consolidated the appeals of three reporters, Branzburg, Pappas and Caldwell, who were each subpoenaed to testify before different grand juries regarding activities they observed while reporting on drug dealers (Branzburg) and the Black Panthers (Pappas and Caldwell). *Branzburg*, 408 U.S. at 667-79. Like Glassdoor, the reporters argued that they "should not be forced either to appear or to testify before a grand jury . . . until and unless sufficient grounds are shown for believing that the reporter possesses information relevant to a crime the grand jury is investigating . . . and that the need for the information is sufficiently compelling to override the claimed invasion of First Amendment interests occasioned by the disclosure." *Id.* at 680. The Supreme Court disagreed.

Notably, the Supreme Court explicitly considered and rejected some of the same arguments advanced by Glassdoor. With respect to the specter of a "chilling effect" on the anonymous exercise of First Amendment rights (*see* Mot. at 7-8), *Branzburg* trusts to the secrecy of the grand jury and the experience of law enforcement officers to protect those who provide information. *Branzburg*, 408 U.S. at 695 ("There is little before us indicating that informants . . . would in fact be in a worse position . . . if they risked placing their trust in public officials as well as reporters.") "Estimates of the inhibiting effect of such subpoenas on the willingness of informants to make disclosures to newsmen are widely divergent and to a great extent speculative." *Id.* at 693-94. Forty years later, with social media use rampant, Glassdoor has offered nothing to suggest that its customer base

///

///

would refrain from posting reviews if reviewing courts continue to treat grand jury subpoenas different from civil subpoenas.[3]

Nor does *Branzburg* offer any support for Glassdoor's argument (*see* Mot. at 9-11) that it and this Court must have the opportunity to inquire into the purpose of the investigation or the compelling need to obtain the users' identities. The Supreme Court squarely rejected such an inquiry in *Branzburg*, using the language of separation-of-powers jurisprudence. "Thus, in the end, by considering whether enforcement of a particular law served a 'compelling' governmental interest, the courts would be inextricably involved in distinguishing between the value of enforcing different criminal laws. By requiring testimony . . . in investigations involving some crimes but not in others, they would be making a value judgment that a legislature had declined to make . . ." *Id.* at 705-06. Glassdoor's normative view is simply not supported by the dispositive case law.

*Branzburg* thus decisively rejects a privilege in the same nature as Glassdoor claims here. In reaching this conclusion, the Court emphasized the constitutionally-rooted importance of affording grand juries wide latitude to conduct criminal investigations:

> Grand jury proceedings are constitutionally mandated for the institution of federal criminal prosecutions for capital or other serious crimes, and its constitutional prerogatives are rooted in long centuries of Anglo-American history. . . . Because its task is to inquire into the Existence of possible criminal conduct and to return only well-founded indictments, its investigative powers are necessarily broad. It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. Hence, the grand jury's authority to subpoena witnesses is not only historic, but essential to its task.

---

[3] Glassdoor of course is not part of the news media. Similar to the news media, however, it claims to speak on behalf of its sources/reviewers, and it claims standing to assert its reviewers' own First Amendment interests in anonymous speech. *See generally* Mot. at 9 n.1. Indeed, a California appellate court, in overturning a trial court's order compelling compliance by Glassdoor with a civil subpoena, characterized Glassdoor in precisely that manner. *Glassdoor, Inc. v. Superior Court*, 2017 WL 944227 (Cal. Ct. App. March 10, 2017). "[I]ts interests resemble those of a news outlet resisting disclosure of the identity of a confidential source." *Id.* at *4 n.3. The rationale and holding in *Branzburg* is particularly apt with respect to Glassdoor.

*Id.* at 687-88 (citations and internal quotation marks omitted). Even without the government's factual proffer in this Response, this presumption of regularity militates in favor of subpoena enforcement.

### C. The Ninth Circuit Has Consistently Rejected the Broad Privilege That Glassdoor Claims

Two years after the Supreme Court's decision in *Branzburg*, in *Lewis v. United States*, 501 F.2d 418 (9th Cir. 1974), the Ninth Circuit had an opportunity to consider a First Amendment-based challenge to a grand jury subpoena seeking information a radio station had received about a bombing. Citing *Branzburg*, the court held that a party may resist a grand jury subpoena on First Amendment grounds only if (1) the grand jury investigation was "instituted or conducted other than in good faith," (2) the information was being sought only to harass the recipient, or (3) there was no legitimate need for the requested material. *Id.* at 422-23. The following year, the Ninth Circuit reiterated these standards when affirming the recipient's contempt conviction for refusing to comply with the subpoena. *Lewis v. United States*, 517 F.2d 236, 238 (9th Cir. 1975).

The Ninth Circuit's next significant decision in this area came in 1993, when it considered a researcher's attempt to invoke the First Amendment as the basis for refusing to comply with a grand jury subpoena investigating the sabotage of an animal research facility. *In re Grand Jury Proceedings (Scarce)*, 5 F.3d 397 (9th Cir. 1993). Citing *Lewis* and *Branzburg*, the court held that a First Amendment-based challenge to a subpoena will lie only "where a grand jury inquiry is not conducted in good faith, or where the inquiry does not involve a legitimate need of law enforcement, or has only a remote and tenuous relationship to the subject of the investigation." *Id.* at 400-01.

Finally, in 2006, the Ninth Circuit again reiterated (in an unpublished opinion) that courts need not apply a balancing test whenever a subpoena recipient believes compliance would burden its First Amendment rights. *In re Grand Jury Subpoena (Wolf)*, 2006 WL 2631398, *1 (9th Cir. 2006). *Wolf* involved a freelance videographer – apparently unconnected to any news organization – who refused to turn over a video of a disruptive protest to the grand jury investigating the crimes associated with the protest, and who was

sanctioned for his refusal.[4] *Id.* at *2 n.1. "[W]e have held that a limited balancing of First Amendment interests may be conducted only 'where a grand jury inquiry is not conducted in good faith, or where the inquiry does not involve a legitimate need of law enforcement, or has only a remote and tenuous relationship to the subject of the investigation' . . . . [Nothing] requires the district court to conduct a balancing test where, as here, there is no showing of bad faith and the journalist refuses to produce non-confidential material depicting public events." *Id.* at *1.

The Ninth Circuit has not yet had occasion to directly apply *Branzburg* to the newer

Simply put, Glassdoor

[4] *Wolf* was decided in September 2006, four months before the Rules of Appellate Procedure and the local Circuit Rules made unreported decisions presumptively citable. *See* FRAP 32.1 and Circuit Rule 36-3. The government cites to *Wolf* here based on the "notice" exception to pre-2007 cases, to wit: to provide notice that the Ninth Circuit's post-*Branzburg* jurisprudence has remained consistent over time. *See* Circuit Rule 36-3(c)(ii).

can only justify quashal if Glassdoor meets its burden to show that "the information is being sought in bad faith, has a tenuous relationship to the subject of the investigation, that law enforcement does not have a legitimate need for the information, or that it is being sought as a means of harassment." (Order at 5:24-28.)

**D. The Subpoena to Glassdoor Was Issued in Good Faith and the Government Has a Legitimate Need for the Information**

125 employees or former employees o[redacted] chose to publicly post comments abou[redacted] on Glassdoor. (Decl. at 2 ¶ 6.) In its subpoena, the government highlighted eight reviews probative of the alleged fraud that it is investigating (Decl. Ex. C, Annex) and subsequently agreed to limit the subpoena to encompass only those eight reviews. (Decl. Ex. E). The reviews are recent and specific, and the information sought would enable the government to speak with employees it could not otherwise identify who by their own publicly-posted words have information about the business practices at issue, such as a 2016 posting by an employee [redacted] (Decl. Ex. C, Annex). Glassdoor cannot meet its burden to show that the government has acted in bad faith or is engaged in a fishing expedition with a tenuous connection to its investigation, and in fact the record establishes its good faith and the legitimate law enforcement need for the evidence.

**II. Glassdoor's Proposed Compelling Interest/Nexus Test Relies on Out-of-Circuit Cases with Distinguishable Facts**

**A. Most of the Cases Cited by Glassdoor Are Inapposite to a Grand Jury Subpoena Dispute**

In its heavily-cited brief, Glassdoor provides substantial support for the unremarkable proposition that the First Amendment is important. But almost none of the cases are relevant here. To be sure, companies in Glassdoor's position have had success challenging trial subpoenas, particularly in the civil realm (Mot. at 8-9), but the Supreme Court has already counseled against reliance on trial subpoena cases when analyzing the subpoenas issued under the grand jury's authority. *R. Enterprises, Inc.*, 498 U.S. at 298.

"The multifactor test announced in *Nixon* would invite procedural delays and detours while courts evaluate the relevancy and admissibility of documents sought by a particular subpoena. We have expressly stated that grand jury proceedings should be free of such delays." *Id.* Nor are the cases alleging retaliation after engaging in protected conduct (Mot. at 7-8) relevant here. The government accordingly focuses the remainder of its argument on the three out-of-circuit cases in which reviewing courts balanced the grand jury's needs with First Amendment rights.

### B. Glassdoor's Cited Cases Are Not the Law in this Circuit and Are Factually Distinguishable

Glassdoor relies on a small series of out-of-district cases for the incorrect proposition that the government must demonstrate a compelling interest in and a sufficient nexus between the information sought and the subject matter of the investigation. Mot. at 7 (citing *In re Grand Jury Subpoena Duces Tecum*, 78 F.3d 1307 (8th Cir. 1996); *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461*, 706 F. Supp. 2d 11 (D.D.C. 2009); *In re Grand Jury Subpoena to Amazon.com dated August 7, 2006*, 246 F.R.D. 570 (W.D. Wis. 2007)). These cases are inapposite.

The Eighth Circuit case involved a claim that a grand jury subpoena duces tecum, issued by the Office of Independent Counsel ("OIC") in its wide-ranging Whitewater investigation against President Clinton and his associates, intruded on the First Amendment right of freedom of association of persons (in that particular case, campaign contributors) identified in documents sought by the subpoena. 78 F.3d at 1309. The Eighth Circuit rejected this argument and found the government had demonstrated a compelling interest in and a sufficient nexus between the information sought and the subject of its investigation. But the fact that the Eighth Circuit employed a balancing test in a campaign finance investigation does not mean it would employ the same balancing test on the facts present here. The claims of the subpoena recipients in the Whitewater investigation involved their right to freedom of association in the political sphere, and political speech has a higher level of protection than the apolitical speech at issue in the instant case. *E.g.*,

*In re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011) (opining, in the context of a civil discovery dispute, that "the notion that commercial speech should be afforded less protection than political, religious or literary speech is hardly a novel principle.").

The other cases cited by Glassdoor involve subpoenas investigating distribution of movies or books that would have resulted in disclosure of information regarding customers and their purchases of expressive materials. *See In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461*, 706 F. Supp. 2d at 16-17 (seeking copies of records that show the identity of all movies sold or distributed); *In re Grand Jury Subpoena to Amazon.com dated August 7, 2006*, 246 F.R.D. at 571 (seeking virtually all of Amazon's records with respect to the sale of 24,000 used books, including identities of the purchasers). Here, the purchase of expressive materials is not at issue. The *Amazon* court was specifically worried about the government receiving "Amazon's list of customers *and their personal purchases*" and the chilling effect it would have on "expressive e-commerce." 246 F.R.D. at 573 (emphasis added). In contrast, the government here is not asking Glassdoor to provide *any information* other than the [redacted] reviewers' identities and whatever limited contact information Glassdoor collects and retains. The same concerns expressed in the three out-of-district cases cited by Glassdoor are not present here.

**C. In Any Event, the Government Can Meet the Higher Standard Here**

The facts of this case establish the government's compelling need to identify anonymous reviewers who have voluntarily posted reviews critical of business practices and ethics at issue in a government investigation of possible contracting fraud. Glassdoor appears to contest most directly the nexus between the reviews and the pre-existing investigation (Mot. at 9-10), but even Glassdoor's out-of-circuit test only requires a "sufficient" nexus rather than a direct or complete one. Here, Glassdoor's reviewers have considerable information about important facts in a [redacted] fraud investigation, including the accuracy of information conveyed by the contractor to the

government agency responsible for it,[6] the manner in which the system is manipulated to [redacted]"[7] and the quality of the work performed under the contract.[8] Under any test or standard, the grand jury is entitled to the subpoenaed information.

**CONCLUSION**

For the foregoing reasons, this Court should deny the request for relief and instead order Glassdoor to comply with subpoena number 16-03-217.

Respectfully submitted this 14th day of April, 2017.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

GARY M. RESTAINO
ANDREW C. STONE
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2017, I hand-delivered this document for filing under seal by the Clerk's Office, and I arranged for a copy to be sent to movant's counsel.

6

7

8

# Exhibit I

glassdoor Jobs Company Reviews Salaries Interviews Write Review For Employers Free Job Postings

Job Title, Keywords, or Company | Location | Jobs | Search

**About Us**

- Executive Team
- Board and Advisors
- Community Guidelines
- Help Center
- Careers
- Press Center
- Terms of Use & Privacy
- Glassdoor Research

# About Us

## Our Mission

To help people everywhere find jobs and companies they love.

## What is Glassdoor?

Glassdoor is one of the fastest growing jobs and recruiting sites.

Glassdoor holds a growing database of millions of company reviews, CEO approval ratings, salary reports, interview reviews and questions, benefits reviews, office photos and more. Unlike other jobs sites, all of this information is entirely shared by those who know a company best — the employees. Add to that millions of the latest jobs — no other site allows you to see which employers are hiring, what it's really like to work or interview there according to employees, and how much you could earn. Glassdoor is also available via its mobile app on iOS and Android platforms.

For employers, Glassdoor offers effective recruiting and employer branding solutions via Glassdoor for Employers. We help thousands of clients and partners promote their employer brand to candidates researching them and advertise their jobs to ideal candidates who may not be aware of them. What differentiates Glassdoor from other recruiting channels is the quality of job candidates we deliver and our influence on candidates' decisions as they research jobs and companies.

Glassdoor is headquartered in Mill Valley, California and was founded by Robert Hohman, Rich Barton and Tim Besse in 2007.

## Learn More

More information about Glassdoor can be found on the Glassdoor Blog, Glassdoor for Employers Blog and by following the company on Twitter, Facebook, Google+ and YouTube.

## Get Involved

### For Employers

Tell your company's story with an Enhanced Employer Profile. Highlight your employment brand, promote your latest job listings, integrate your profile into Facebook, and get access to advanced analytics and competitive benchmarking. Learn More.

### For Career Centers & Libraries

Give your students or library patrons unlimited access to Glassdoor without having to post information of their own. Learn more about our programs for Career Centers and Libraries.



Exhibit J

glassdoor Jobs Company Reviews Salaries Interviews Write Review For Employers Free Job Postings

Job Title, Keywords, or Company | Location | Jobs | Search

- About Us
- Press Center
- Terms of Use & Privacy
  - Terms of Use
  - Privacy Policy
- Glassdoor Research

Glassdoor Privacy Policy

## How We Share Information

We do not disclose your individual account or usage data to third parties, except as follows:

- With your consent;
- We use affiliated and unaffiliated service providers all over the world that help us deliver our service and run our business subject to strict confidentiality agreements;
- We share aggregated usage statistics that cannot be used to identify you individually;
- We will disclose data if we believe in good faith that such disclosure is necessary (1) to comply with relevant laws or to respond to subpoenas or warrants or legal process served on us; (2) to enforce our Glassdoor Terms of Use and Privacy Policy; (3) when we believe disclosure is necessary or appropriate to prevent physical harm or financial loss or in connection with an investigation of suspected or actual illegal activity; or (4) as we otherwise deem necessary to protect and defend the rights or property of us, the users of our services, or third parties. Our general procedure with respect to civil subpoenas requesting user data is to require a court order, binding on Glassdoor, before we release such information;
- In a reorganization or sale of our company or assets, your data may be transferred, subject to the acquirer accepting the commitments made in this Statement and compliance with applicable law;
- If you apply for a particular job through Glassdoor, we will disclose your personal information to the employer to whom you apply;
- We may invite you to include your resume or other information in more generally available formats. For example, we may introduce services for employers, recruiters and others that rely on accessing our database of user information. Subject to visibility settings that you control, subscribers to those services will be able to view information that you post;
- We may share certain information that does not identify you personally, but which is unique to your use of Glassdoor, such as job titles that you have entered at the time of registration or on your profile; when we share such information, we do not link job titles with your name when we provide this information to others, such as advertisers, recruiters or employers.

Glassdoor has millions of jobs plus salary information, company reviews, and interview questions from people on the inside making it easy to find a job that's right for you.

# Exhibit K















# SEALED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

In Re: Grand Jury Subpoena Issued to Glassdoor, Inc.

Case No.
(Grand Jury Subpoena No. 16-03-217)

**ORDER**

**(SEALED)**

Pending before the Court are a Motion to Quash Grand Jury Subpoena Pursuant to Fed.R.Crim.P. 17(c)(2) and the Government's Response in opposition thereto.

The Court has received Glassdoor, Inc.'s request for oral argument submitted via email. The Court denies the request because oral argument will not aid the Court's decision. The Court however, will permit Glassdoor, Inc. to file a Reply.

**IT IS ORDERED** that Glassdoor, Inc. shall file a Reply in support of its Motion to Quash Grand Jury Subpoena Pursuant to Fed.R.Crim.P. 17(c)(2) that does not exceed 10 pages in length no later than Friday, April 28, 2017.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall provide all counsel a copy of this order by U.S. Postal Mail.

Dated this 19th day of April, 2017.

Honorable Diane J. Humetewa
United States District Judge

Alexis E. Danneman (#030478)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
ADanneman@perkinscoie.com

Todd M. Hinnen (WSBA No. 27176)
(*pro hac vice application to be filed*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
THinnen@perkinscoie.com

William J. Frimel (CA No. 160287)
Christopher R. Edger (CA No. 229771)
(*pro hac vice applications to be filed*)
SEUBERT FRENCH FRIMEL & WARNER LLP
1075 Curtis Street
Menlo Park, CA 94025
Tel: 650.322.3048
Fax: 650.322.2976
bill@sffwlaw.com

*Attorneys for Nonparty Glassdoor, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: GRAND JURY SUBPOENA ISSUED TO GLASSDOOR, INC. | Grand Jury Subpoena No. 16-03-217 (Assigned to Honorable Diane J. Humetewa, United States District Judge)<br>**REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MOVANT'S MOTION TO QUASH**<br>**(Filed Under Seal)** |

**INTRODUCTION**

This matter arises out of a grand jury subpoena that purports to compel Glassdoor to identify 125 anonymous speakers who associated on Glassdoor's platform to engage in and receive protected speech regarding labor conditions at, and potential mismanagement

of, a publicly-funded program [redacted] The government subsequently agreed to narrow the subpoena to seek the identities of only eight of the original 125 participants (the "Participants"). In light of the government's implicit admission that 117 of the 125 anonymous Participants whose identities the government sought to expose are not important to its investigation, Glassdoor moved to quash the subpoena to ensure that a court appropriately weighed the interest of effective grand jury investigations against the interest in protecting anonymous association and speech on matters of public concern.

In its response, the government seeks to minimize the protection to which the Participants' anonymous association and speech is entitled, misconstrues Glassdoor's claims, and misapplies Supreme Court and Ninth Circuit precedent. Participants' association and speech regarding issues of significant public concern is entitled to the protection of the First Amendment. Glassdoor does not assert a reporter's or scholar's privilege on its own behalf; it asserts the Participants' First Amendment rights anonymously to associate and exchange views regarding important public issues. *Branzburg* and the Ninth Circuit cases cited by the government (all of which address such assertions of privilege) permit, and applicable Ninth Circuit precedent requires, the Court to protect the First Amendment rights to anonymous association and speech by requiring a grand jury subpoena that intrudes upon those rights to further a compelling interest and seek Participants' identities only if they bear a sufficient nexus to that interest.

## ARGUMENT

### 1. The First Amendment protects Participants' rights anonymously to associate and to share and receive information regarding the administration and labor conditions of a publicly-funded [redacted] program [redacted]

As Glassdoor established in its Motion to Quash and Memorandum of Points and Authorities, the First Amendment affords the highest level of protection to Participants' rights anonymously to associate and to share and receive information regarding the administration and labor conditions of a publicly-funded [redacted] program [redacted] *See* Mot. at 5-6. This proposition would seem beyond dispute--Glassdoor's

very purpose is to provide a platform where participants interested in a particular employer can form an anonymous community and safely share their views regarding its administration and employment practices. Here, the employer administers a publicly funded program [redacted].

Speech regarding such "public affairs" or "public issues" receives the First Amendment's highest level of protection. *See McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) ("[S]peech that concerns 'issues about which information is needed or appropriate to enable the members of society' to make informed decisions about the operation of their government merits the highest degree of first amendment protection.") (quoting *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940)). The government's attempt to minimize the First Amendment status of this association and speech by mischaracterizing it as "apolitical," Resp. at 5, 10, and "commercial," Resp. at 11,[1] and mischaracterizing the information sought by the subpoena merely as "business records," Resp. at 5, is therefore unavailing, as is the government's attempt to distinguish on this basis precedent cited by Glassdoor. *See* Resp. at 10 (arguing that the Eighth Circuit's decision in *In re Grand Jury Subpoena Duces Tecum*, 78 F.3d 1307 (8th Cir. 1996), is inapposite because the "political speech" at issue there was entitled to a "higher level of protection than the apolitical speech at issue in the instant case"); Resp. at 11 (arguing that the concerns regarding expressive activity at issue in the other cases cited by Glassdoor "are not present here").

The Participants are not engaged in apolitical, commercial association and speech. They have formed an online forum or community in which they can safely express their views and engage in advocacy regarding the administration of, and labor conditions at, an important publicly-funded program. The subpoena does not merely seek businsess

[1] Separate and apart from the fact that the reviews address issues of significant public concern, the government's characterization of them as commercial speech is clearly incorrect. They do not propose or relate to a commercial transaction. *See, e.g.*, *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (commercial speech is, at its core, "speech which does no more than propose a commercial transaction").

records, it seeks to deprive Participants engaged in protected association and speech of the anonymity to which they are entitled by the First Amendment.

**2. Glassdoor asserts Participants' First Amendment Rights of Anonymous Association and Expression.**

Glassdoor's Motion to Quash expressly rests not on assertion of its own reporter's privilege but rather on the Participants' First Amendment rights of anonymous association and expression. *See* Mot. at 9 n.1. The government therefore errs when it asserts that Glassdoor claims "a privilege in the same nature" as the reporters claimed in *Branzburg*. Resp. at 6. As a result of that error, the government misconstrues *Branzburg* and its progeny and misapplies them to the distinct claims Glassdoor makes on behalf of the Participants, which require a different analysis.

**3. *Branzburg* and its Ninth Circuit progeny do not prevent the court from protecting Participants' First Amendment rights.**

*Branzburg* addresses only whether a journalist can refuse to testify or produce evidence to a grand jury on the basis of a journalist's or newsman's privilege.[2] It does not establish the appropriate test to be applied when a grand jury subpoena conflicts with the First Amendment rights of anonymous association and expression.

In *Branzburg*, three newsmen asserted a "newsman's privilege" in light of which they could not be compelled to disclose the identities of their sources. *Branzburg v. Hayes*, 408 U.S. 665, 686 (1972). They asserted their own privilege claims, not the First Amendment claims of their sources. *Id.* at 696 ("[T]he privilege claimed is that of the reporter, not the informant."). As noted above, Glassdoor seeks review of the subpoena not based on an assertion of its privilege as a publisher but rather based on the Participants' First Amendment rights. Glassdoor's claims on behalf of the Participants are thus distinct from those put forward by the reporters in *Branzburg*.[3]

[2] See James S. Liebman, Search and Seizure of the Media: A Statutory, Fourth Amendment, and First Amendment Analysis, 28 Stan. L. Rev. 957, 975 (1976) (discussing *Branzburg*'s narrow application to press claims of privilege).

[3] *Branzburg* is distinguished not only by the claims asserted, but also by the facts. In *Branzburg*, the identity of a single source involved in or possessing evidence of

The Participants also differ from the sources in *Branzburg*. The Court expressly relied on the fact that the sources were directly involved in the crime or its concealment, rejecting "the notion that the First Amendment protects a newsman's agreement to conceal the criminal conduct of his source, or evidence thereof, on the theory that it is better to write about crime than to do something about it." *Id.* at 692; *id.* at 697 ("concealment of crime and agreements to do so are not looked upon with favor"). By contrast, the government does not here allege that the Participants engaged in or concealed criminal conduct; rather, the government targeted Participants solely because of their association and advocacy regarding the publicly funded program their employer administers. *See* Resp. at 3.

*Branzburg*'s narrow holding--"requiring newsmen to appear and testify before state or federal grand juries [does not] abridge the freedom of speech and press guaranteed by the First Amendment"--does not apply to the facts of this case. *Id.* at 667.[4] Glassdoor is not a "newsman," it is a platform for anonymous association and expression regarding employment conditions, and it does not here assert a "newsman's privilege," it asserts its users' First Amendment rights to associate and speak anonymously about issues of significant public concern.

In determining whether a newsman enjoys an absolute privilege not to testify or produce evidence, the Court did not endorse a particular test.[5] In fact, the Court expressly

---

unlawful conduct was sought from each reporter. Here, the government sought the identity of 125 anonymous Participants on the basis of their protected association and speech before agreeing, after Glassdoor's objection, to limit the subpoena to the identities associated with only eight reviews. Resp. at 8. In the words of the *Branzburg* Court, the issued subpoena "attempt[-ed] to invade protected First Amendment rights by forcing wholesale disclosure of names and organizational affiliations for a purpose that was not germane to the determination of whether crime has been committed." *Branzburg*, 408 U.S. at 700.

[4] The government's characterizations of *Branzburg*'s holding frequently neither quote from nor cite to the opinion. *See* Resp. at 4 (asserting without citation that Branzburg "squarely rejected the compelling interest/nexus test"); Resp. at 5 (asserting without citation that courts have no role to play in balancing grand jury authority and First Amendment rights absent a showing of bad faith).

[5] *See In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461*, 706 F.Supp.2d 11, 18-19 (D.D.C. 2009) (because the reporters' assertion of privilege in *Branzburg* did not implicate a First Amendment right, the Court "did not consider[]

acknowledged that some courts impose a compelling interest test and found that "[t]he requirements of those cases . . . which hold that a State's interest must be 'compelling' or 'paramount' to justify even an indirect burden on First Amendment rights, are also met here." *Id.* at 700. The Court concluded its opinion by expressly acknowledging that First Amendment rights circumscribe grand jury investigative authority and reserving to other courts before which parties raised a direct conflict between grand jury authority and core First Amendment rights the appropriate standard to apply: "Grand juries are subject to judicial control and subpoenas to motions to quash. We do not expect courts will forget that grand juries must operate within the limits of the First Amendment." *Id.* at 708.[6]

*Branzburg* thus holds only that a newsman subpoenaed by a grand jury to identify a source cannot refuse to do so on the basis of an absolute privilege. Courts must rather strike a balance between the newsman's First Amendment interest and the interest in effective grand jury investigations to ensure that grand juries "operate within the limits of the First Amendment." *Branzburg*, 408 U.S. at 708. In striking that balance, courts should "on a case-by-case basis" inquire as to the "needs of law enforcement" and the "relationship" between those needs and the information sought. The Court acknowledged the existence of, and expressly found that the cases before it met, the "compelling interest" test. *See id.* at 700. As other courts have recognized, even in the narrow context of assessing a newsman's right to resist a grand jury subpoena, the Supreme Court did not

---

whether the substantial relationship would be the appropriate standard of review for a subpoena implicating First Amendment interests").

[6] Justice Powell, concurring, emphasized "the limited nature of the Court's holding," noting that "if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationship without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered." *Id.* at 709-10. (The "need of law enforcement"/more than "tenuous relationship" test articulated by Justice Powell even in a case involving a journalists' privilege, not the core rights of the speakers themselves, bears a striking resemblance to the compelling interest/substantial nexus test.) The Court's holding, he continued, required "striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions." *Id.* at 710.

in *Branzburg* and has not since dictated to lower courts the "appropriate standard for reviewing grand jury subpoenas that implicate First Amendment concerns." *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461*, 706 F.Supp.2d 11, 18 (D.D.C. 2009) ("despite its admonition in *Branzburg* [that courts must remember grand jury's must comply with the First Amendment], the Supreme Court has yet to define the appropriate standard for reviewing grand jury subpoenas that implicate First Amendment concerns"); *In re Grand Jury Subpoena to Amazon.com*, 246 F.R.D. 570, 572 (W.D.Wis. 2007) (finding *Branzburg* consistent with holding that "although a grand jury subpoena is presumed valide and enforceable, if the witness demonstrates a legitimate First Amendment concern raised by the subpoena, then the government must make an additional showing that the grand jury actually needs the disputed information") .

The Ninth Circuit cases cited by the government are similarly narrow in focus. In *Lewis I*, a reporter claimed "a privilege based upon the station's right to protect the sources of news information." *In re Matter of the Grand Jury Proceeding re Will Lewis*, 501 F.2d 418, 420 (9th Cir. 1974). In *Lewis II*, the same reporter asserted the same claim of privilege with the same narrow result. *See In the Matter of the Proceedings of Witness Before Grand Jury re Will Lewis,* 517 F.2d 236 (9th Cir. 1975). In *Scarce*, the court rejected an academic's claim that a "scholar's privilege" "akin to that of a reporter" vested him with the right to resist a grand jury subpoena requiring testimony about his personal knowledge of criminal conduct within his area of study. *In re Grand Jury Proceedings*, 5 F.3d 397 (9th Cir. 1993). Finally, in *Wolf*, the court confined its consideration to a reporter's claim of privilege not to disclose evidence or provide testimony regarding illegal conduct during a protest. *See In re: Grand Jury Subpoena*, 2006 WL 2631398 (9th Cir. 2006). None of these cases addresses the question *Branzburg* left open, *i.e.*, the appropriate balance between a grand jury's interest in effective investigation and the core First Amendment rights of association and expression. None of them, therefore, addresses the claims raised by Glassdoor on behalf of the Participants in its Motion.

That is not to say that the Ninth Circuit has not addressed the question. In *Bursey*

*v. United States*, two staff members of *The Black Panther* newspaper refused to provide testimony to a grand jury not only on the basis of a newsman's privilege but also on the basis that doing so would violate their, their colleagues', and the political advocates who spoke through their newspaper's, core First Amendment rights of association and free expression. 466 F.2d 1059, 1082 (9th Cir. 1972) ("[t]he First Amendment interests in this case are not confined to the personal rights of Bursey and Presley," they include the broader rights of association and free expression), partially superseded on other grounds by statute, *Organized Crime Control Act of 1970,* Pub. L. No. 91-452 at § 301(a), *as recognized by In re Grand Jury Proceedings*, 863 F.2d 667, 669-70 (9th Cir. 1988).

Acknowledging the important interest in thorough, independent grand jury investigations, the court nevertheless held that "the existence of theses interests does not automatically override First Amendment rights, and their invocation does not alone carry the Government's burden with respect to any question that the grand jury seeks to force a witness to answer over his First Amendment protest. The fact alone that the Government has a compelling interest in the subject matter of a grand jury investigation does not establish that it has any compelling need for the answers to any specific questions." *Id.* at 1086. The court set forth the Ninth Circuit standard applicable when grand jury investigative authority conflicts directly with the First Amendment rights to associate and express views anonymously regarding issues of public importance:

> When governmental activity collides with First Amendment rights, the Government has the burden of establishing that its interests are legitimate and compelling and that the incidental infringement upon First Amendment rights is not greater than is essential to vindicate its subordinating interests . . . When the collision occurs in the context of a grand jury investigation, the Government's burden is not met unless it establishes that the Government's interest in the subject matter of the investigation is 'immediate, substantial, and subordinating,' that there is a 'substantial connection' between the information it seeks to have the witness compelled to supply and the overriding governmental interest in the subject matter of the investigation, and that the means of obtaining the

> information is not more drastic than necessary to forward the asserted governmental interest.

*Id.* at 1083. In his Opinion on Petition for Rehearing, Judge Hufstedler noted that the *Bursey* Court "required the grand jury to establish that there was a 'substantial connection' between the information sought and the criminal conduct which the Government was investigating before the witnesses could be held in contempt for refusing to answer questions that cut deeply into First Amendment rights" and noted that "we have concluded that the balance we struck is not impaired by *Branzburg*." *Id.* at 1091. The court thus endorsed the compelling interest/substantial connection test and held that it was consistent with *Branzburg*. Although a separate holding by the *Bursey* Court was subsequently superseded by statute, neither any statute nor any subsequent decision has disturbed *Bursey*'s holding that courts confronted by a conflict between grand jury authority and core First Amendment rights must apply the compelling interest/substantial connection test. Regarding this issue, *Bursey* remains good law binding on this Court.

The Ninth Circuit is not alone or anomalous in requiring that the government demonstrate a compelling interest and substantial connection. *See e.g., In re Grand Jury Proceedings*, 776 F.2d 1099 (2d Cir. 1985); *In re Grand Jury Subpoena for Appearance of Faltico*, 561 F.2d 109, 111 (8th Cir. 1977) (for a grand jury subpoena to be enforced despite a First Amendment challenge the government must sustain "its burden of showing a compelling state interest in the subject matter of the investigation and a sufficient nexus between the information sought and the subject matter of the investigation."); *In re Grand Jury Subpoena No. 11116275*, 846 F.Supp.2d 1, 4 (D.D.C. 2012) (The First Amendment right "to post on the Internet . . . anonymously" cannot be overridden "unless the government can show 'a compelling interest in the sought after material' and 'a sufficient nexus between the subject matter of the investigation and the information'" sought.).

**CONCLUSION**

Under controlling Ninth Circuit authority, where, as here, a grand jury subpoena seeks to compel identification of anonymous advocates because of their association and

advocacy regarding labor conditions and potential mismanagement of a publicly-funded program providing [redacted] a party may request that a court review the subpoena to ensure that the identities sought bear a substantial relation to the furtherance of a compelling government interest. Glassdoor respectfully requests that this Court conduct such a review, and quash the subpoena to the extent that it does not meet this standard.[7]

Dated: April 28, 2017

**PERKINS COIE LLP**

By: [signature]

Alexis E. Danneman (#030478)
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788

Todd M. Hinnen (WSBA No. 27176)
(*pro hac vice application to be filed*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

William J. Frimel (CA No. 160287)
Christopher R. Edger (CA No. 229771)
(*pro hac vice applications to be filed*)
SEUBERT FRENCH FRIMEL & WARNER LLP
1075 Curtis Street
Menlo Park, CA 94025

*Attorneys for Nonparty Glassdoor, Inc.*

---

[7] In *In re Grand Jury Subpoena to Amazon.com*, the court fashioned "a solution that accommodates the legitimate needs of both the grand jury and the protesting witness," directing Amazon to solicit witnesses with relevant knowledge from among its anonymous users and to disclose the identities of only those who replied. 246 F.R.D. at 572. Glassdoor respectfully submits that a similar solution would appropriately balance the grand jury's interest and Participants' First Amendment interests here. This solution is, as *Bursey* requires, "no more drastic than necessary to forward the asserted government interest." 466 F.2d at 1083. Glassdoor offered to proceed in this manner, but the government declined.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2017, I hand-delivered this document for filing under seal by the Clerk's Office and copy of the foregoing emailed to:

Gary Restaino
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Gary.Restaino@usdoj.gov

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
GARY M. RESTAINO
Arizona State Bar No. 017450
Gary.Restaino@usdoj.gov
ANDREW C. STONE
Arizona State Bar No. 026543
Andrew.Stone@usdoj.gov
Assistant U.S. Attorneys
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for the United States*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

In re: Grand Jury Subpoena Issued to Glassdoor, Inc.

GJ Subpoena No. 16-03-217
(Assigned to Honorable Diane J. Humetewa United States District Judge)

**GOVERNMENT'S MOTION FOR LEAVE TO FILE A SUR-REPLY**

**(Filed Under Seal)**

Glassdoor, with leave of court, filed a ten-page reply in the instant matter. Glassdoor's initial motion focused on the right to anonymous speech, but a portion of the reply raises, for the first time in this subpoena enforcement action, the Ninth Circuit case of *United States v. Bursey* and its discussion of *associational* rights. (Reply at 7:28 to 9:14.) As a general matter, a district court may disregard arguments raised for the first time in a reply, and if the court chooses to consider those arguments a sur-reply would be appropriate. *E.g., United States v. Roy*, 2010 WL 3327746 at * 1-2 (D. Ariz. 2010) (accepting for filing the government's protective sur-reply where the defendant in a collateral attack on an underlying deportation in a criminal immigration prosecution raised a new issue in his reply).

The government accordingly seeks here the opportunity to file a short sur-reply limited to the discrete segment of the reply referenced above, in order to procedurally and

substantively distinguish *Bursey*. A signed copy of the proposed sur-reply is attached as Exhibit 1.

Undersigned counsel has communicated with counsel for Glassdoor about this motion, and Glassdoor takes no position with respect to this motion.

Respectfully submitted this 4th day of May, 2017.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

GARY M. RESTAINO
ANDREW C. STONE
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2017, I hand-delivered this document for filing under seal by the Clerk's Office, and I arranged for a copy to be sent to movant's counsel.

# EXHIBIT 1

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
GARY M. RESTAINO
Arizona State Bar No. 017450
Gary.Restaino@usdoj.gov
ANDREW C. STONE
Arizona State Bar No. 026543
Andrew.Stone@usdoj.gov
Assistant U.S. Attorneys
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for the United States*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

In re: Grand Jury Subpoena
Issued to Glassdoor, Inc.

GJ Subpoena No. 16-03-217
(Assigned to Honorable Diane J. Humetewa
United States District Judge)

**GOVERNMENT'S SUR-REPLY IN OPPOSITION TO MOVANT'S MOTION TO QUASH**

**(Filed Under Seal)**

In Glassdoor's reply in support of its motion to quash, Glassdoor makes two erroneous arguments: (1) Glassdoor argues that *Branzburg* doesn't apply, rather the Ninth Circuit's decision in *Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972) provides the applicable standard, and (2) even beyond *Branzburg*'s applicability, Glassdoor argues its situation is distinguishable from those the journalists faced in *Branzburg*. Both of these arguments are unavailing.

Glassdoor, for the first time in its reply brief, argues that *Bursey* controls the outcome of this case. Yet *Bursey*'s applicability is not supported by the facts of this case, or by subsequent Ninth Circuit case law or by Glassdoor's decision to omit the *Bursey* analysis from its original motion. In the instant case Glassdoor seeks to protect the anonymous speech of current and former [redacted] employees, not their rights to association. The Ninth Circuit has had numerous opportunities to follow *Bursey* and has

instead chosen to follow the *Branzburg* decision when faced with factually similar situations involving the identification of sources of information. *See, e.g., Lewis v. United States*, 501 F.2d 418 (9th Cir. 1974) ("*Lewis I*"); *Lewis v. United States*, 517 F.2d 236 (9th Cir. 1975) ("*Lewis II*"); *In re Grand Jury Proceedings (Scarce)*, 5 F.3d 397 (9th Cir. 1993); *In re Grand Jury Subpoena (Wolf)*, 2006 WL 2631398, *1 (9th Cir. 2006). None of the above cases in any way contained the unique associational privacy and political interests implicated by Bursey's membership in the Black Panther Party, and the instant case does not contain those unique interests either.

*Bursey's* balancing test is inapposite here.

*see also Glassdoor, Inc. v. Superior Court*, 2017 WL 944227, at *4 n.3 (Cal. Ct. App. March 10, 2017) ("[Glassdoor's] interests resemble those of a news outlet resisting disclosure of the identity of a confidential source."). This Court should apply *Branzburg* to resolve Glassdoor's motion.

## I. The Court Should Reject Glassdoor's Narrow Interpretation of *Branzburg* and Expansive View of *Bursey*

Glassdoor makes the argument in its reply brief that *Branzburg*'s holding must be construed narrowly. So narrowly, in fact, that Glassdoor argues the case's "only" holding is that a "newsman subpoenaed by a grand jury to identify a source cannot refuse to do so on the basis of an absolute privilege." Reply at 6. The Ninth Circuit disagreed with that interpretation in the *Lewis I, Lewis II, Scarce,* and *Wolf* cases noted above and discussed in the government's response. Resp. at 7-8. All of these cases relied on *Branzburg* to reach the conclusion that when analyzing a party's First Amendment interests in responding to a grand jury subpoena, a limited balancing test may be conducted, *only* "where a grand jury inquiry is not conducted in good faith, or where the inquiry does not involve a legitimate need of law enforcement, or has only a remote and tenuous relationship to the subject of

the investigation." *See Wolf*, 2006 WL 2631398, at *1 (citing *Scare*, 5 F.3d at 401). This is *Branzburg*'s holding as interpreted by the Ninth Circuit and thus the appropriate standard for the Court to apply to Glassdoor's motion to quash. As discussed in the government's response, Glassdoor has not met, nor can it meet, its burden to show the government has acted in bad faith. Resp. at 9.

Glassdoor couples its narrow view of *Branzburg* with an expansive view of *Bursey* -- a case that Glassdoor did not discuss in its 11-page motion, which cited nearly 30 other cases. Glassdoor cited numerous out-of-district cases for the proposition that the government must show a compelling interest and substantial nexus before receiving the information requested in the grand jury subpoena. Resp. at 6-9. *Bursey* was not mentioned. Now, in its reply, Glassdoor argues for the first time that *Bursey* is "binding on this Court." Reply at 9. That *Bursey* "endorsed the compelling interest/substantial connection test." *Id.* That this Court must follow *Bursey*. *Id.* at 9-10. If Glassdoor actually believed in *Bursey* with this level of conviction, one would expect it to have been cited with the dozens of other cases in its motion.[1]

The reality is that the Ninth Circuit has rejected movant's reading of *Bursey*. In *Scarce*, the recipient of the grand jury subpoena argued he did not need to comply with the subpoena because of *Bursey*. 5 F.3d at 402. The *Scarce* court held that *Bursey*, an opinion issued one day after *Branzburg*, did not support Scarce's position. *Id.* The court also noted that *Bursey* was decided before the *Lewis* cases and suggested the subpoena in *Bursey* was improper only due to "the lack of a substantial connection between the information sought and the criminal conduct the Government was investigating." *Id.* The *Scarce* court viewed *Bursey* as a narrow, fact-specific decision rather than a seminal opinion that filled gaps in *Branzburg*. In fact, the Ninth Circuit has never applied *Bursey* to strike down a grand jury subpoena on First Amendment grounds. *Bursey*'s treatment by subsequent Ninth Circuit

panels confirms it doesn't establish the broad First Amendment defense posited by Glassdoor in its reply brief.

**II. Glassdoor's Situation is Analogous to the Journalists Involved in the *Branzburg* Decision**

Glassdoor unsuccessfully attempts to distinguish its relationship with the users of its website from the journalists' relationships with their confidential sources in *Branzburg*. Reply at 4. First, as noted above, other courts have found that there is no distinction between Glassdoor and the *Branzburg* journalists.

ts *see also Glassdoor, Inc.*, 2017 WL 944227, at *4 n.3 ("[Glassdoor's] interests resemble those of a news outlet resisting disclosure of the identity of a confidential source.").

Second, as discussed in the government's response, *Branzburg* does not make any distinction between anonymous potential criminals and anonymous witnesses to potential crimes. Resp. at 8 (citing *Branzburg*, 408 U.S. at 693). Accordingly, Glassdoor's attempt to distinguish its users in this manner is unavailing.

Finally, Glassdoor makes the conclusory statement that because the company seeks review of the subpoena based on the users' First Amendment rights, rather than its own First Amendment rights, this somehow places this case in a category outside the scope of *Branzburg*. As an initial matter, Glassdoor provides no legal support for this position. *See* Reply at 4. In addition, it is incongruous for the law to force a newspaper reporter to divulge her confidential informants who may have witnessed a crime, but to permit a for-profit company not to divulge the same information simply because the potential witness posted information on the company's website. Glassdoor should not be permitted to sidestep what a newspaper may not.

## III. Conclusion

For the foregoing reasons, this Court should deny the request for relief and instead order Glassdoor to comply with subpoena number 16-03-217.

Respectfully submitted this 4th day of May, 2017.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

GARY M. RESTAINO
ANDREW C. STONE
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on May 4th, 2017, I hand-delivered this document for filing under seal by the Clerk's Office, and I arranged for a copy to be sent to movant's counsel.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| In re: Grand Jury Subpoena Issued to Glassdoor, Inc. | GJ Subpoena No. 16-03-217 (Assigned to Honorable Diane J. Humetewa United States District Judge) **ORDER** **(Filed Under Seal)** |
|---|---|

Upon motion of the government, and good cause appearing,

IT IS HEREBY ORDERED that the government may file a sur-reply in this matter.

IT IS FURTHER ORDERED accepting the proposed sur-reply lodged as Exhibit 1 to the motion.

DATED this ____________ day of May, 2017.

______________________________

Hon. Diane J. Humetewa
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

In Re: Grand Jury Subpoena Issued to Glassdoor, Inc.

Case No.
(Grand Jury Subpoena No. 16-03-217)

**SEALED ORDER**

The Court has received the Government's Motion for Leave to File a Sur-Reply to respond to a limited segment of the reply wherein Glassdoor, Inc. relied upon *United States v. Bursey*. The Court grants this request because Glassdoor, Inc. did not rely upon *Bursey* in its original motion, and so the Government has not yet had an opportunity to respond to this argument.

**IT IS ORDERED** that the Government shall be permitted to file the Sur-Reply it attached as Exhibit 1 to its Motion for Leave to File a Sur-Reply no later than Monday, May 8, 2017.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall provide all counsel a copy of this order by U.S. Postal Mail.

Dated this 4th day of May, 2017.

Honorable Diane J. Humetewa
United States District Judge

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
GARY M. RESTAINO
Arizona State Bar No. 017450
Gary.Restaino@usdoj.gov
ANDREW C. STONE
Arizona State Bar No. 026543
Andrew.Stone@usdoj.gov
Assistant U.S. Attorneys
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for the United States*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

In re: Grand Jury Subpoena Issued to Glassdoor, Inc.

GJ Subpoena No. 16-03-217
(Assigned to Honorable Diane J. Humetewa United States District Judge)

**GOVERNMENT'S SUR-REPLY IN OPPOSITION TO MOVANT'S MOTION TO QUASH**

**(Filed Under Seal)**

In Glassdoor's reply in support of its motion to quash, Glassdoor makes two erroneous arguments: (1) Glassdoor argues that *Branzburg* doesn't apply, rather the Ninth Circuit's decision in *Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972) provides the applicable standard, and (2) even beyond *Branzburg*'s applicability, Glassdoor argues its situation is distinguishable from those the journalists faced in *Branzburg*. Both of these arguments are unavailing.

Glassdoor, for the first time in its reply brief, argues that *Bursey* controls the outcome of this case. Yet *Bursey*'s applicability is not supported by the facts of this case, or by subsequent Ninth Circuit case law or by Glassdoor's decision to omit the *Bursey* analysis from its original motion. In the instant case Glassdoor seeks to protect the anonymous speech of current and former [redacted] employees, not their rights to association. The Ninth Circuit has had numerous opportunities to follow *Bursey* and has

instead chosen to follow the *Branzburg* decision when faced with factually similar situations involving the identification of sources of information. *See, e.g., Lewis v. United States*, 501 F.2d 418 (9th Cir. 1974) ("*Lewis I*"); *Lewis v. United States*, 517 F.2d 236 (9th Cir. 1975) ("*Lewis II*"); *In re Grand Jury Proceedings (Scarce)*, 5 F.3d 397 (9th Cir. 1993); *In re Grand Jury Subpoena (Wolf)*, 2006 WL 2631398, *1 (9th Cir. 2006). None of the above cases in any way contained the unique associational privacy and political interests implicated by Bursey's membership in the Black Panther Party, and the instant case does not contain those unique interests either.

*Bursey's* balancing test is inapposite here.  *see also Glassdoor, Inc. v. Superior Court*, 2017 WL 944227, at *4 n.3 (Cal. Ct. App. March 10, 2017) ("[Glassdoor's] interests resemble those of a news outlet resisting disclosure of the identity of a confidential source."). This Court should apply *Branzburg* to resolve Glassdoor's motion.

## I. The Court Should Reject Glassdoor's Narrow Interpretation of *Branzburg* and Expansive View of *Bursey*

Glassdoor makes the argument in its reply brief that *Branzburg*'s holding must be construed narrowly. So narrowly, in fact, that Glassdoor argues the case's "only" holding is that a "newsman subpoenaed by a grand jury to identify a source cannot refuse to do so on the basis of an absolute privilege." Reply at 6. The Ninth Circuit disagreed with that interpretation in the *Lewis I, Lewis II, Scarce,* and *Wolf* cases noted above and discussed in the government's response. Resp. at 7-8. All of these cases relied on *Branzburg* to reach the conclusion that when analyzing a party's First Amendment interests in responding to a grand jury subpoena, a limited balancing test may be conducted, *only* "where a grand jury inquiry is not conducted in good faith, or where the inquiry does not involve a legitimate need of law enforcement, or has only a remote and tenuous relationship to the subject of

the investigation." *See Wolf*, 2006 WL 2631398, at *1 (citing *Scare*, 5 F.3d at 401). This is *Branzburg*'s holding as interpreted by the Ninth Circuit and thus the appropriate standard for the Court to apply to Glassdoor's motion to quash. As discussed in the government's response, Glassdoor has not met, nor can it meet, its burden to show the government has acted in bad faith. Resp. at 9.

Glassdoor couples its narrow view of *Branzburg* with an expansive view of *Bursey* -- a case that Glassdoor did not discuss in its 11-page motion, which cited nearly 30 other cases. Glassdoor cited numerous out-of-district cases for the proposition that the government must show a compelling interest and substantial nexus before receiving the information requested in the grand jury subpoena. Resp. at 6-9. *Bursey* was not mentioned. Now, in its reply, Glassdoor argues for the first time that *Bursey* is "binding on this Court." Reply at 9. That *Bursey* "endorsed the compelling interest/substantial connection test." *Id.* That this Court must follow *Bursey*. *Id.* at 9-10. If Glassdoor actually believed in *Bursey* with this level of conviction, one would expect it to have been cited with the dozens of other cases in its motion.[1]

The reality is that the Ninth Circuit has rejected movant's reading of *Bursey*. In *Scarce*, the recipient of the grand jury subpoena argued he did not need to comply with the subpoena because of *Bursey*. 5 F.3d at 402. The *Scarce* court held that *Bursey*, an opinion issued one day after *Branzburg*, did not support Scarce's position. *Id.* The court also noted that *Bursey* was decided before the *Lewis* cases and suggested the subpoena in *Bursey* was improper only due to "the lack of a substantial connection between the information sought and the criminal conduct the Government was investigating." *Id.* The *Scarce* court viewed *Bursey* as a narrow, fact-specific decision rather than a seminal opinion that filled gaps in *Branzburg*. In fact, the Ninth Circuit has never applied *Bursey* to strike down a grand jury subpoena on First Amendment grounds. *Bursey*'s treatment by subsequent Ninth Circuit

panels confirms it doesn't establish the broad First Amendment defense posited by Glassdoor in its reply brief.

## II.   Glassdoor's Situation is Analogous to the Journalists Involved in the *Branzburg* Decision

Glassdoor unsuccessfully attempts to distinguish its relationship with the users of its website from the journalists' relationships with their confidential sources in *Branzburg*. Reply at 4.  First, as noted above,  other courts have found that there is no distinction between Glassdoor and the *Branzburg* journalists.

*see also Glassdoor, Inc.*, 2017 WL 944227, at *4 n.3 ("[Glassdoor's] interests resemble those of a news outlet resisting disclosure of the identity of a confidential source.").

Second, as discussed in the government's response, *Branzburg* does not make any distinction between anonymous potential criminals and anonymous witnesses to potential crimes.  Resp. at 8 (citing *Branzburg*, 408 U.S. at 693).  Accordingly, Glassdoor's attempt to distinguish its users in this manner is unavailing.

Finally, Glassdoor makes the conclusory statement that because the company seeks review of the subpoena based on the users' First Amendment rights, rather than its own First Amendment rights, this somehow places this case in a category outside the scope of *Branzburg*.  As an initial matter, Glassdoor provides no legal support for this position. *See* Reply at 4.  In addition, it is incongruous for the law to force a newspaper reporter to divulge her confidential informants who may have witnessed a crime, but to permit a for-profit company not to divulge the same information simply because the potential witness posted information on the company's website.  Glassdoor should not be permitted to sidestep what a newspaper may not.

## III. Conclusion

For the foregoing reasons, this Court should deny the request for relief and instead order Glassdoor to comply with subpoena number 16-03-217.

Respectfully submitted this 8th day of May, 2017.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

GARY M. RESTAINO
ANDREW C. STONE
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on May 8th, 2017, I hand-delivered this document for filing under seal by the Clerk's Office, and I arranged for a copy to be sent to movant's counsel.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| In Re: Grand Jury Subpoena Issued to Glassdoor, Inc. | Case No. (Grand Jury Subpoena No. 16-03-217)<br>**ORDER**<br>**(SEALED)** |
| --- | --- |

Currently before the Court is Glassdoor, Inc.'s Motion to Quash Grand Jury Subpoena No. 16-03-217 ("Motion"). The Motion is fully briefed.

**I. Background**

Glassdoor, Inc. ("Glassdoor") operates the website glassdoor.com, "which provides a forum for current and former employees of companies to anonymously voice opinions regarding those businesses." (Motion at 3:16-18). These opinions are voiced in the form of reviews which can be viewed by other users of the site. Individuals who anonymously write reviews must provide an e-mail address to Glassdoor, but the e-mail address is not publicly available.

The Government is currently investigating possible fraud involving [redacted] [redacted] Between September 2008 and March 2017, various Glassdoor users posted 125 employee reviews of [redacted] The Government served upon Glassdoor a grand jury subpoena dated March 6, 2017. The subpoena sought:

> "All 'Company Reviews' for [redacted] including all reviewer information. Reviewer information requested includes, but is not limited to, internet protocol addresses and logs associated with all reviews including date and time of post, username, email address, resume, billing information such as first name, last name, credit card information, billing address, payment history and any additional contact information available."

Eight examples of Company Reviews were attached to the subpoena. After Glassdoor contacted the Assistant United States Attorney ("AUSA") and explained its position that providing the information sought would violate it users' First Amendment right to anonymous expression, the Government narrowed the subpoena to seek only identities of the authors of the eight example reviews and "their associated reviewer information." (Letter from AUSA Restaino to Glassdoor, Ex. E). The Government asserts that its investigation requires the identities of the eight reviewers because they "offer common employee insights into [redacted] and its administration of [] federal contracts" and because they are "third party witnesses to potential unlawful conduct." (Response at 3:18-21). There is no allegation that any of the users engaged in any unlawful conduct.

Glassdoor again declined to identify the eight users, and offered "to contact the authors… to determine whether they would be willing to provide their identifying information to the government, and provide that information with respect to any reviewers who gave their consent." (Letter from Glassdoor to AUSA Restaino, Ex. G). After the Government rejected this proposal, Glassdoor filed the Motion.

## II. The Parties' Arguments

Glassdoor argues that its users have a First Amendment right to speak anonymously, and that in order to deprive its users of that right, "the Government must demonstrate to the Court that (1) it has a compelling interest in obtaining the [redacted] reviewers' identities, and (2) there is a clear nexus between those persons' identities and the grand jury's investigation." (Motion at 3:2-5 (citing *In re Grand Jury Investigation of*

*Possible Violation of 18 U.S.C. §1461 et seq.*, 706 F. Supp. 2d 11, 18 (D.D.C. 2009)). Glassdoor asserts that the Government has not carried its burden.

In its Response, the Government argues that Glassdoor (and not the Government) bears the burden on this issue. According to the Government, this dispute is governed by a bad faith test first articulated in *Branzburg v. Hayes*, 408 U.S. 665 (1972). Per this test, the Government asserts, Glassdoor must comply with the subpoena unless it can demonstrate that the Government acted in bad faith.

In the Reply, Glassdoor argues that this Court should apply the "compelling interest/substantial connection test" articulated in *Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972). Glassdoor also asserts, "Glassdoor is not a 'newsman,' it is a platform for anonymous association and expression regarding employment conditions, and it does not here assert a 'newsman's privilege,' it asserts its users' First Amendment rights to associate and speak anonymously about issues of significant public concern." (Reply at 5:13-17).

Glassdoor had not cited to *Bursey* in the Motion, so the Government moved for leave to file a sur-reply. Such leave was granted. In its sur-reply, the Government argues that the balancing test of *Bursey* is inapplicable here, and the court should rely on the holding in *Branzburg*. The Government reiterates its argument that Glassdoor's relationship with its users is analogous to a journalist's relationship with his or her confidential sources.

## III. Analysis

As an initial matter, the facts of *Bursey* are distinguishable from this case and the compelling interest/substantial connection test articulated therein is not applicable here. Glassdoor's users have a First Amendment right to speak anonymously. *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 342 (1995). This right is distinct from the First Amendment right discussed at length in *Bursey*: the right to associate with a political group and anonymously print and distribute critiques of the government. *Bursey*, 466

F.2d at 1085 ("Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind. Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all."). Glassdoor's users are not a political association, nor are they engaged in the type of advocacy at issue in *Bursey*. [1]

The First Amendment generally does not protect reporters, scholars, or newspapers from responding to subpoenas issued by a grand jury. *See Branzburg*, 404 U.S. 665 at 684; *In re Grand Jury Proceedings*, 5 F.3d 397, 401-02 (9th Cir. 1993). Glassdoor argues in its Reply that it "does not assert a reporter's or scholar's privilege on its own behalf; it asserts [its users'] First Amendment rights anonymously to associate and exchange views regarding important public issues." (Reply at 2:13-15). Glassdoor further asserts that the speech of its users is not apolitical because its users "have formed an online forum or community in which they can safely express their views and engage in advocacy regarding the administration of, and labor conditions at, an important publicly-funded program." (Reply at 3:21-24). Glassdoor's effort to meaningfully distinguish itself from reporters and scholars fails.[2] Glassdoor provides a forum in which individuals can anonymously post their opinions about their employers. The fact that the relevant users in this case work (or worked) for a publicly-funded program does not make this speech political. Nor does it transform the reviewers from individuals voicing concerns about fraud into an association engaged in advocacy.

---

[1] Additionally, the *Bursey* court was concerned by the "increasing flow of cases arising out of grand jury proceedings concerned with the possible punishment of political dissidents." *Id.* at 1089. Glassdoor does not contend that the Government is in any way motivated by a desire to punish political dissidents here.

[2] Glassdoor asserts that it has standing to assert its users' rights to speak anonymously. As support for this assertion, Glassdoor cites to a recent case from the California Court of Appeals explaining that Glassdoor, as the "acknowledged publisher of the speech at issue" was "entitled to assert the First Amendment interests of their anonymous contributors in maintaining anonymity." *Glassdoor, Inc. v. Superior Court*, 9 Cal. App. 5th 623, 629 (Cal. App. 2017). Glassdoor's assertion that its standing stems from its status as a publisher demonstrates that even Glassdoor considers itself similar to a newspaper.

"[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *U.S. v. R. Enterprises, Inc.*, 498 U.S. 292, 300 (1991). Glassdoor asserts that requiring compliance with the subpoena "could have a chilling effect on both Glassdoor's reviewers' and readers' willingness to use glassdoor.com." (Motion at 2:20-22). The journalists in *Branzburg* raised a similar challenge to a grand jury subpoena. *Branzburg*, 408 U.S. 679-80. Rejecting this challenge, the Supreme Court explained, "[T]he great weight of authority is that newsmen are not exempt from the normal duty of appearing before a grand jury and answering questions relevant to a criminal investigation." *Id.* at 685.

Glassdoor, like any newsman asserting a privilege on behalf of its sources, must respond to the grand jury subpoena. In this case, that requires a disclosure of the identities of the authors of the eight relevant reviews. A contrary ruling would require acceptance of the argument, explicitly rejected by the Supreme Court in *Branzburg*, that "the public interest in possible future news about crime from undisclosed, unverified sources must take precedence over the public interest in pursuing and prosecuting those crimes [already] reported to the press." *Branzburg*, 408 U.S. at 695.

The Supreme Court carved out an exception to its ruling for any grand jury investigation "conducted other than in good faith." *Branzburg*, 408 U.S. 707. But Glassdoor has made no showing that the Government acted here "other than in good faith." Thus, the motion to quash must be denied.

## IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Glassdoor's Motion to Quash Grand Jury Subpoena No. 16-03-217 is **DENIED.**

**Dated** this 10th day of May, 2017.

Honorable Diane J. Humetewa
United States District Judge